McCartney, Kenny & Co. v. Lewis P. Buck & Co.

*Mechanics Lien—Application of Money Paid to Creditor.*

The mere statement in a book of accounts of the plaintiff in an action under the Mechanics' Lien Law, that materials delivered by him are to be used in the erection, alteration or repair of a building, is not by itself evidence sufficient to constitute the lien contemplated by the statute, and to show that said materials were furnished on the credit of the building.

The facts that a contractor demanded, and the owner of the building made, a cash payment on materials furnished for use in a building, and that before the contractor brought the present action under the Mechanics' Lien Law he brought replevin for the articles mentioned in his claim of lien, held to be circumstances proper to be considered by the. jury in support of oral testimony that the articles were not furnished on the credit of the building.

Materials furnished for upholstering a building for public amusement, held not to be the subject of a lien under the Mechanics' Lien Law.

When there are different claims and payment is made without direction by the debtor how it shall be applied, the creditor may apply it to whichever of the claims he chooses, at any time before account settled or suit brought; if he does not exercise his right, the court will apply the payment as the right of the law requires.

*(New Castle, December 7, 1887.)*

Scire Facias on Mechanic's Lien.

The plaintiffs, McCartney, Kenny & Co., had contracted with defendants, Lewis P. Buck & Co., for the material for upholstering the Academy of Music. The goods and materials were charged to L. P. Buck & Co. Plaintiffs claim they were furnished on the credit of the building. All goods furnished were in the building prior to its completion, and amounted to $2,605.27, of which $1,100 had been paid. The original terms of the contract were, $1,300 cash and note for $500, in advance. Some of the goods were delivered by plaintiffs, and afterwards replevied ; and when Buck went to look for some plush at their store, plaintiffs demanded some money, as they had to pay cash for the material; they were

paid $1,100.   Plaintiffs in a letter had offered to accept defendants' note for $1,300, on three months' time.   Verdict for plaintiff in opposition to the charge of the Court.

L. C. Vandegrift for plaintiffs.

Johnston and Hayes, for defendants:

The deed from Robert Smith to Lewis P. Buck and James H. Shoemaker, recorded K. Vol. 13 page 116, is inadmissible to prove the ownership of the land, as alleged in the statement of the claim, the allegation being that James H. Shoemaker and Lewis P. Buck late trading as L. P. Buck & Co. were the owners or reputed owners thereof: the plaintiffs allege an ownership as partners, the deed discloses on its face that the land was conveyed to Lewis P. Buck and James H. Shoemaker as tenants in common.   The deed fixes the status of the property; Lewis P. Buck and James H· Shoemaker are tenants in common, and parol evidence is inadmissible to prove that, though the conveyance is to them as individuals, yet they are partners in the land.

Rev. Code, 527; *Hale v. Henrie,* 2 Watts, 143-145; *Ridgeway's Appeal,* 15 Pa. St., 177-181; *Coder v. Hulings,* 27 Pa. St., 84-89; *Erwin's Appeal,* 39 Pa. St., 535-537; *Lefevre's Appeal,* 69 Pa. St., 122-125; *Ebbert's Appeal,* 70 Pa. St., 79; *Nat. Bank's Appeal,* 83 Pa. St., 204-206; *Geddes Appeal,* 84 Pa. St., 483; *Shaffer's Appeal,* 106 Pa. St., 49-54; *Schaffer v. Fowler,* 111 Pa. St., 451; *Goodwin v. Richardson,* 11 Mass., 469-475; *Howard v. Priest,* 5 Metc., 582-585; *Peck v. Fisher,* 7 Cushing, 386-390; *Ensign v. Briggs,* 6 Gray, 329; *Coles v. Coles,* 15 Johnson, 159-161; *Lawrence v. Taylor,* 5 Hill, 107-111; *Otis v. Hill,* 8 Barber, 102-122; *Blake v. Nutter,* 19 Maine, 16; *Price v. Hicks,* 14 Florida, 565.

A party cannot make title to land by a parol admission of his adversary.

*Clark v. Baird,* 5 Selden, 183; *Ferry v. Chandler,* 16 N. Y., 354-358; *Walker v. Dunspaugh,* 20 N. Y., 170·173.

A general declaration that there was a partnership without giving any of its terms is not sufficient evidence, such declaration might well be consistant with a tenancy in common.

*Gregory v. Martin's Admr.,* 78 Ill., 38.

And general reputation that there was a partnership is hearsay and inadmissible.

*Smith v. Griffith,* 3 Hill, 333-336; *Halliday v. McDougall,* 20 Wend., 81-88; *Taylor v. Webster,* 39 N. J. L., 102-104; *Brown v. Crandall,* 11 Conn., 92; *Saggers v. Tupper,* 38 Mich., 258-262; *Inglebright v. Hammond,* 19 Ohio, 337-343.

A man's general character may be proved by reputation, but not his title to real estate.

*School Dist. v. Blakslee,* 13 Conn., 227-235; *Howland v. Crocker,* 7 Allen, 153.

The Mechanics' Lien Act not only creates a new remedy, but also a new right therefore to multiply the objects subject to its provisions by way of liberal construction is against the rules of interpretation of such statutes.

*Capelle et. al., v. Baker's Ex.,* 3 Houston, 344-356; *Phillips on Mechanics' Lien,* Secs. 9-10-15-18; *Ibid,* Secs. 19-21-36-153; *Ibid,* Sec. 297; *Noll v. Swineford,* 6 Penna. St., 187; *Brady v. Anderson,* 24 Ill., 111; *Cook v. Heald,* 21 Ill., 425-429; *Wagar v. Briscoe,* 38 Mich., 587-592; *Plummer v. Eckenrode,* 50 Md., 232; *Willar v. Magoon,* 30 Mich., 273; *Parker v. Anthony,* 4 Gray, 289-290.

A lien is secured by the statute to "any person or persons having performed or furnished work and labor or materials, or both, to an amount exceeding twenty-five dollars in or for the erection, alteration or repair of any house, building or structure, in pursuance, &c.," upon complying with the provisions of the act; section 4 provides. "The provisions of this act are hereby declared to ex-"tend to work and labor performed and furnished, or materials

" furnished in plumbing, gas-fitting, paper-hanging, paving, wharf " building, and to iron works and machinery of every kind in mills " and factories, and to bridges, and shall be as well by as against " corporations. as individuals."

There is no question of " alteration or repair " in this case, the material furnished must have been for the erection of the building, house or structure. The statute gives a lien for work and labor done or material furnished or both in or for the erection of the structure, not to one who has contributed goods or materials for the adornment, ornamentation and furnishing of the structure after it had been erected. The legislature has not by express terms given a lien for carpets, tables, door-mats, matting, spools of silk and cotton, labor in making and laying carpet muslin, &c., these are all at most only furniture, and the Court will not go beyond the express terms of the statute, to come within the provisions of the statute the material must be so applied as to constitute a part of the building, and not merely for its more convenient use.

*Lambard v. Pike*, 33 Maine, 141; *Drew v. Mason*, 81 Ill., 498; *Beckwith v. R. R.*, 29 Conn., 256-267; *Jarechi v. Philharmonic Society*, 79 Penna. St., 403; *E. T. Iron Co. v. Bynum*, 2 Sneed, 268; *In re The Olmpic Theatre*, 2 P. A. Brown, 275.

A portable iron furnace used for heating a church, standing on the cellar floor and held in its position by its own weight, and capable of being detached and also its own pipes, without injury to the building, is not a fixture.

*Rahway Sav. Inst. v. Irving Bap. Church*, 36 N. J. E., 61; *Town v. Fiske*, 127 Mass., 125; *Hesham v. Detrie* [*Baltimore heater*,] 89 Pa. St., 506; *McKeage v. Hans. Ins. Co.*, 81 N. Y., 38; *Freeland v. Southworth*, 24 Wend., 191; *Beck v. Rebow*, 1 P. Williams, 94.

But in this case everything furnished by the claimants, with a possible exception of the plush, &c., used in the curtain, is furniture. For it can be used in any other building with equal facility; it is only for the convenient use of the building, or for an orna-

ment of it. Clearly all fringe used in the building was only for ornamental purposes, in fact fringe has no other use; the carpets and table were and are merely furniture.

*See Gibbons on Fixtures*, 20 &21 [3 Law Lib.;] *Lambard v. Pike*, 33 Maine, 141.

A party seeking a peculiar right or remedy, in respect to a particular debt, must enforce it by itself, and not unite it with other claims. Any other rule would be highly unjust and oppressive.

*Phillips' on Mechanic's Liens*, Sec. 296; *Hickox v. Fay*, 36 Barb., 9-14; *Truesdell v. Gay*, 13 Gray, 311; *Lambard v. Pike*, 33 Maine, 141; *Johnson v. Pike*, 35 Maine, 291; *Bank v. Redman*, 57 Maine, 405; *Baker v. Fessenden*, 71 Maine, 292; *Morrison v. Minot*, 5 Allen, 403; *Graves v. Bemis*, 8 Allen, 575; *Mulroy v. Barrow*, 11 Allen, 152; *Driscoll v. Hill*, 11 Allen, 154; *Felton v. Minot*, 7 Allen, 412; *Whitney v. Joslin*, 108 Mass., 103.

The claimants in this action have so mingled their items for which they claim a lien that it is impossible to ascertain the exact amount for which a lien can be maintained [if any lien is secured them by the provisions of the statute for any of the materials furnished, or work and labor done by them as they claim] therefore in accordance with the above law they have lost any lien they had. Parol evidence is admissible to show what the intention of Buck & Co. was at the time the payment of $1100 was made as to how it was to be applied.

*Isley v. Jewett*, 2 Metc., 168-174; *Bickle v. Pettigrew*, Supra 6 Ohio St., 252.

Although the debtor may not give an express direction, at the time of the payment, to which of several debts a payment made by him, shall be applied or appropriated, yet a direction may be implied from the circumstances.

*Mitchell v. Dall*, 2 H. & G., 150-173; *Ibid*, 13 Md. Ct of App., 119-129; *Ibid*, 4 Gill. & J., 361-373; *Ibid*, 17 Md. Ct. of App., 251-259.

The account rendered L. P. Buck & Co. on the 21st of Janu-

ary 1886, by the claimants, and in which the claimants credit generally the payment of $1100 on the account, and claim a general balance only, is evidence of an appropriation by the plaintiffs of the said sum to the account as it stood, to wit, to the earliest items in their order.

*Pickering v. Day*, Supra; *Allen v. Culvier*, 3 Denio, 284, 291, 293; *Simpson v. Ingham*, 2 Barn. & C. 65 [9 E. C. L. 25, 29, 30; *Hooper v. Keap*, L. R. 1 Q. B. Dir., 178-180.

Where there are distinct accounts and a general payment, and no appropriation by the debtor at the time of payment, the creditor may apply the payment to which account he pleases; provided he makes it any time before an account is settled between them; but where the account is treated as one entire account by all parties the payment is deemed in contemplation of law, to be made in discharge of the earliest items of the account, so that the creditor cannot select any particular item or class of items, and appropriate the payment to them, to the exclusion of the earlier items in the account.

1 *Addison on Contracts*, Sec. 353; *Clayton's Case*, 1 Merv. 528, [607, 608, 609;] *Bodenham v. Purchas*, 2 Barn. & Ald. 39, [4*E. C. L.;] *Brooks v. Enderby*, 2 B. & B. 70 [6 E. C. L 25;] *Smith v. Wigley, et al.*, 3 Moore & Scott, 174, [30 C. L.;] *Simpson v. Ingham*, 2 B. & C. 65 [I. B. C. L. 25;] *Hennicker v. Wigg*, 4 Ad. & El. N. S. 793, 45 E. C. L.; *Discount Co. v. McLean L. R.* 9 Com. Pleas, 693; *Bickle v. Pettigrew*, 6 Ohio St., 252; *Dey v. Anderson*, 39 N. J. L., 199; *Neidig v. Whitford*, 29 Md., 179; *Trustees of Luth. Church v. Heisse et. al.*, 44 Md. 453, 468-469-470-471 & 472; See *Pickering v. Day*, 3 Houston, 537; *S. C.*, 2 Bates, 368; *Thurlow v. Ford*, 40 Maine, 378, 380; *Harris v. Hoopes*, 50 Md. 537-550.

If payment is offered on an account not due, the creditor need not receive it, yet, if he does receive it he is bound to apply it in accordance with the directions of the debtor.

*Wetherill v. Joy*, 40 Maine, 325.

The receipt of money for a defined use amounts to an agreement on the part of the person receiving it that he will not apply it to any other.

*Smuller v. Union Canal Co.*, 37 Penn St., 68.

The plaintiffs admit of record that " the payment was a general payment on account," this binds them.

*Huffington v. Hayes*, 64 Barbour, 573, [577.]

The building is land for it follows the land.

*Ballou v. Spencer*, 4 Cowen, 163; *Porter v. McClure*, 15 Wend., 192.

The plaintiffs, having furnished both labor and material in pursuance to a contract made, as they allege with the owners of the land, and having filed their lien within ninety days cannot recover in this action.

COMEGYS, C. J., charged the jury:

In this case, several questions are to be considered.

1st. Whether the articles claimed for, that is those mentioned in what is called Schedule B, were furnished to the defendants upon the credit of the building called The Academy of Music, on Delaware Avenue near Tatnall Street in this city? This is a question of fact for you to decide.

2nd. Whether they are such materials as are contemplated by, and intended to be embraced within, the Mechanics Lien Law of this State. That is a question of law about which you will be instructed.

3rd. Whether the payment of $1,100 made by Lewis P. Buck, one of the defendants, was ment by him to be applied to the plush items charged in the account? That is a question of fact.

4th. Was this the understanding between the parties? That is also a question of fact.

The first question to be determined is a vital one.  Were the articles, supplied by the plaintiffs, furnished on the credit of the building ?  If not, the plaintiffs are not entitled to your verdict.  The solution of this question depends upon the evidence in the case.  The mere statement in a plaintiff's book of accounts, that materials delivered by him are to be used in the erection, alteration, or repair of a building, is not, by itself alone, evidence sufficient to constitute the lien contemplated by the statute ; a book of accounts, under our law and practice in the courts, being simply evidence, when supplemented by the oath of the party to whom they belong, of the sale and delivery of the goods charged, and their price.   It is necessary that such plaintiff should establish the fact of the credit, given upon the building in course of erection, in some other way.   Since the passage of the Act of Assembly, allowing parties to be witnessess in their own cases, he may do this by his own oath alone, provided sufficient credit be given to it by a jury.   And the defendant may give proof, by his oath, to the contrary.  In this case you have the oaths respectfully of the plaintiff, Kenny, and the defendant, Buck, which are at variance, the defendant stating that at the time he made the payment of $1,100, it was understood that it was received to pay for certain plush which he had ordered; and that the plaintiffs had agreed to supply, and that the goods ordered were to be supplied by the plaintiffs, on the credit of the firm of Lewis P. Buck & Co., of which he was a member, or words to that effect.   The plaintiff Kenny. denies that altogether, and says his firm furnished the materials, for which the lien is sought, upon the credit of the builing alone.   Here then is a direct conflict of testimony, and it is your duty, as sworn jurors, to decide to which statement your confidence shall be given.   It is a very difficult, and delicate matter as well, for a jury to decide between opposite statements by single witnesses, but not infrequently there are circumstances in proof, more or less corroborative in the character of the oath of one of the defendants.   Where such exist they are to be taken into account by the jury, and given such weight as, in their

judgment, they are entitled to.  Of course, where they really tend
to support his statements, they give to his side (if there be none to
sustain the oath of his opponent) additional consequence or weight,
so that a jury will yield to the influence which such circumstances
require.   But if there are also circumstances of support to the testi-
mony of the other party, then the oaths and circumstances of each
side must be weighed in opposite scales in the minds of the jury,
and true credit given where it seems to belong.   Let us apply these
considerations to the case before us.   It is a fact, in this case, that
the subject of giving the credit for the materials bargained for to
the building, is not shown to have been mentioned between Kenny
and Buck.   That is to be considered.   It was sworn to by the lat-
ter, that the payment he made of $1,100 was required because the
former said the plush ordered could not be bought without the cash,
and that he must have $1,300 as a cash payment.   A large amount
of plush, (which is a costly article,) was required.   Afterwards it
was agreed between them that the sum of $1,100 should be ac-
cepted as the cash payment.   The money was paid by Buck's check
on the 4th of December, 1885.   A receipt for this money payment
was given by the one firm, which in so many words stated that the
payment was for plush, drapery, etc.   The defendants counsel con-
tend before you, that the demand from the defendants of so large a
money payment as $1,100, of itself shows that the claim of any
materials being furnished in fact upon the credit alone of the build-
ing in process of erection, is a mere pretense.   They point you to
the fact, in support of this contention, that, before the claim in this
case was filed, the plaintiffs brought an action of replevin, as it is
called, to regain the possession of many of the identical articles
mentioned in their claim of lien.   They insist that such a step,
especially as it was taken by the counsel who are now prosecuting
this mechanic's lien claim for the plaintiffs, is wholly inconsistent
with their present position as claimants of a lien under an allega-
tion that the things sought to be obtained in that way were deliv-
ered on the credit of the building.   For they argue, if they were

delivered on the credit of the building, they were out of the power of any writ to restore them to the plaintiffs, but in their possession, with the further contention that, if they were delivered on the credit of the building, that fact was as well known when the replevin was brought, (which was before the mechanic's lein was filed) as it was when such lien was filed. Whether the circumstances of the demand of cash payment on the bill to be supplied, and the fact of remedy being sought by replevin to regain possession of the goods, are facts supportative of the defendants' contention that the credit was to the firm and not to the building, it is for you to decide. If you should believe that they are, then you have their weight to add to the oath of the defendant, Buck on the side of his firm. I do not remember that any fact or circumstance was given in evidence before you in support of the oath of the plaintiff. If any were it escaped my attention, but you will doubtless remember it and give it due weight; and I feel it proper to say to you that both the testifying witnesses mentioned are parties to this proceeding, and are therefore supposed at least to be not so free from bias of interest as indifferent witnesses are. You should consider that fact in making up your verdict.

The next question to consider is this : Were the articles supplied such as are contemplated by the mechanic's lien law ? That is purely a question of law, upon which I will proceed to give you the law as we understand it ; and you must be guided in that respect by what we say to you upon that point. I feel it not improper to say that very soon after the mechanic's lien laws were passed in the different States which created them, strong disposition was developed by the courts, which were called upon to interpret them, to give a more liberal interpretation, so great, indeed, as to divert their language from its obvious meaning, and make it express a great deal that certainly could not have been in the contemplation of those who employed it, or they would have been more profuse in their expressions. Most, if not all these laws, give the right to lien where materials and work, or both, were to be fur-

nished in the "erection, alteration, or repair of buildings or structures." Now, these words would seem to be quite plain in their signfication, and insusceptible of any interpretation but the common one of building, altering, or repairing a house. Words in a statute even, are to be taken in their usual sense in which they are understood by people generally, unless there be some technical sense in which they must be considered in order to give the intended effect to the law; or the circumstances under which they are employed warrant applying a different sense to them. Not very long after our act was passed, the latitude of construction, to which I have referred, was also to be applied by this Court in interpreting it; but keeping in mind, as the Court did, the true office of a Court, which interpretation,—not by procrastination to make law a deliverance,—was made by it through my learned brother on my right, which has been the settled rule with the statute now under consideration from the time of that case, (*Capelle v. Baker*, 3 Houst., 344,) to the present day. I will read the part of the judgment of the Court to which I refer, (at page 356 :) "It is to us a matter of regret, that we have not had an opportunity to examine more fully the statutes and ruling of Pennsylvania on the subject. But, as this is the first enactment of the kind we have ever had in this State, and is a new and untried experiment of no little gravity and importance to the people of it, and is introduced as a novelty into the general code and body of our laws without any legislative explanation or definition of the operation and effect which it is to have in relation to them, or to what extent it is incidentally to vary or modify them, we cannot implicitly rely on the decisions of any other State, under similar enactments, for our guidance or instruction under such circumstances, or follow them any further in the interpretation and construction of it than our own best judgment and reason and reflection may approve as intrinsically right and proper in such a case. Both our inclination and conviction of duty, therefore, is not to extend the operation of the act by construction any further than the terms of it clearly require, and to leave it to the

legislature to remedy whatever defect or deficiencies may be found to attend it when put into practical operation and effect." We are therefore not to stretch the act beyond the limit fixed by it. While this is a true rule, yet, in the interpretation of all statutes not penal, some liberty is allowed by rules of construction, where it appears to a Court that no violance will be done to the plain meaning of the words used, and the Court is constrained to believe that such liberty can be taken in a case within the evident contemplation of the framers of the law. Accordingly in a case, (*France v. Woolston*, 4 Houst., 557,) where glazing and painting were sought to be brought within the scope of the act, the Court allowed it to be done. The building would not be habitable without the glazing, nor the wood protected from decay without the painting. No violence was done to the meaning of the legislature by that, but when an attempt was made to so interpret the act as to make it include an architect's bill for a plan of a building, the Court refused to allow it. It would seem very unreasonable to allow a claim like the present to come under the Mechanic's Lien Law, when one so apparently essential to the proper erection of a building, an architects plan, according to which the structure was built, was refused. The strong language read to you from the case of *Capelle v. Baker* with superadded decision denying the architect the benefit of a lien, was, in all probability, the reason for the enactment in the fourth section of a new Mechanic's Lien Law in the place of the old one, which is in these words: " 16 Laws Del. c. 145. An act in relation to mechanic's liens. Section 4. The provisions of this act are hereby declared to extend to work and labor performed and furnished, or materials furnished in plumbing, gas-fitting, paper-hanging, paving, wharf-building, and to iron works and machinery of every kind, in mills and factories, and to bridges, and shall be as well by and against corporations as individuals."

Now, in view of this section, it is quite impossible for this Court, having regard to its duty of interpretation, to refuse to yield to the claim of the plaintiff, that the articles included in this pro-

ceeding, nor any of them, come within the meaning of the lien law. It would be apparently a usurpation of the functions of the legislature, looking toward what they felt called upon to do, to enlarge the scope of the act by expressly bringing within it such materials as plumbing, gas-fitting, paving, wharf-building, etc., to say that the things claimed here are materials also of like nature, or quality of service, etc. We therefore say to you that the law does not cover or include them. But it being agreed by the defendants' counsel that so much of the plush (whatever quantity that has been shown to be) as made the drop curtain of the Academy, may be treated as materials within the provision of the act, you may consider them as such. Their counsel, however, contend that though they may be so treated, yet that the said plush being the first item of the bill, and not amounting in value to so much as the cash payment of $1,100, it was settled for by such payment and therefore there is no claim in existence. In support of this contention, you are pointed by them to the language of the receipt for the money. The plush was used in the curtain and the draperies in and around certain boxes, according to the testimony. A part, also, was used elsewhere, but it is claimed by the defendants' counsel that the cash payment covered the whole of it. It is for you to decide, upon examination, whether this be true or not. The counsel for the plaintiffs insist that this curtain was not paid for by the cash advance, because they claim that their clients had the right to apply that payment, as they allege they did, to the extinction of such of the items of their whole account as were not, as they express it, lienable items. A great many books have been read and commented on, and much has been said on both sides on the subject of appropriation of payments; but we may disregard all decisions elsewhere upon the subject, relying upon our own. One important case has arisen in this State, when the Court of Chancery first and the Court of Appeals afterwards, gave utterance to their views upon this subject. In both the rule is laid down, and must be our and your guide in this case, that when there are different claims,

and payments are made without direction by the debtor how it shall be applied, the creditor may apply it to which of them he chooses, at any time before account settled or suit brought; if he does not exercise his right, the court will apply it, as the right of the law requires. Both sides claim to have made the appropriation in this case. The defendants contend that their Mr. Buck made it by his check in pursuance of the plaintiffs' demand of cash payment, which they claim was to put the plaintiffs in funds to buy plush with; and also by the evidence the receipt gives that it was to pay for the plush, drapery, etc., and therefore that it could not be applied without his consent to anything else. On the other hand, the plaintiffs contend that the receipt, notwithstanding its particular language, was only meant to be a general payment on the whole bill. We express no opinion upon this matter, as we have no right to give any, leaving it entirely to you to decide which contention, under all the proof and circumstances, is, of the two, the more consistent therewith. If you adopt the view of the plaintiffs, then they are entitled to your verdict, for the value of the plush that went into the making of the drop curtain; but if, on the contrary, you adopt that of the defendants, they are entitled to your verdict. But if it was a general credit to the whole bill, why specify any items? That question is for you.

Verdict for the plaintiff.