John F. Bushelman Co., Appellant, v. Troxell et al.,
Appellees.

[Cite as John F. Bushelman Co. v. Troxell (1975),
44 Ohio App. 2d 365.]

(No. C-74306—Decided May 5, 1975.)

*Messrs. Lindhorst & Dreidame* and *Mr. Joseph H. Tad-deo, Jr.,* for appellant.
*Messrs. Chalfie & Teller,* for appellees.

Palmer, J. The plaintiff, John F. Bushelman Company, the appellant herein, a sub-contractor of the defendant William Troxell, one appellee herein, performed work incident to the demolition of structures located on the property of Malibu Enterprises.

When plaintiff went unpaid, it timely filed a mechanic's lien against Malibu, and brought this action for alternative relief in the form of (1) a money judgment against Troxell, (2) the foreclosure of its mechanic's lien against Malibu, and (3) a money judgment for unjust enrichment against Malibu. In response to Malibu's motion for summary judgment, the trial court found that there was no relief due the plaintiff on the unjust enrichment claim, and that no right to a mechanic's lien existed under R. C. 1311.-02, where the demolition work was not performed preparatory to new construction on the land. Thereafter, the plaintiff took a default judgment against Troxell on the first count, recited above.

Here, the single[1] assignment of error argued on appeal asserts that the granting of the summary judgment was contrary to law because Malibu's property was improved by the demolition of the buildings, thereby bringing plaintiff within both the mandate and intent of the Ohio mechanic's lien statute.

## I.

R. C. 1311.02, in pertinent part,[2] establishes a right to a lien in every person, corporation, or subcontractor thereof who does work "for the improvement, enhancement, or embellishment of real property *by* seeding, sodding * * * planting * * * grading, or filling to establish a grade * * *." (Emphasis added.) The lien may be had "*upon* the interest * * * of the owner * * * *in* the lot or land upon which they [the improvements] stand * * * or upon which such grading or filling has been done * * *." (Emphasis added.) Here, the facts are uncontroverted that plaintiff performed none of the above (or other) specific categories of labor for which a lien may attach. Despite its source in the Ohio Constitution,[3] the mechanic's lien is a creature of statute and must be strictly construed with respect to "whether a lien *attaches.*" *Manpower, Inc.,* v. *Phillips* (1962), 173 Ohio St. 45; *Robert V. Clapp Co.* v. *Fox* (1931), 124 Ohio St. 331. (Emphasis added.) It would seem inevitably to follow from the foregoing that plaintiff's labor, i. e., demolishing a structure or structures and removing attendant rubble, does not entitle him to a mechanic's lien since the statute

---

[1] Inasmuch as no error is "specifically pointed out in the record and separately argued by brief" as to the granting of summary judgment on the unjust enrichment claim, this court will not consider the potential issues thereunder. App. R. 12(A).

[2] Questions concerning liens for the "removal" of buildings or appurtenances are inapposite where, as here, no factual issue of *moving* a structure from one location to another is involved.

[3] "Laws may be passed to secure to mechanics, artisans, laborers, sub-contractors and material men, their just dues by direct lien upon the property, upon which they have bestowed labor or for which they have furnished material. No other provision of the constitution shall impair or limit this power. (Adopted Sept. 3, 1912.)" Ohio Constitution, Article II, Section 33.

fails expressly to mandate that a lien may attach for this category of labor.

## II.

Notwithstanding the foregoing, plaintiff urges that it is entitled to a mechanic's lien where the legislature enacted a statute obviously intending to create a right exhausting the purpose expressed in the 1912 constitutional amendment (note 3 infra), but neglected or failed to articulate its intent by omitting the precise work category involved. This argument requires the resolution of two questions in which we must be persuaded: first, that the failure to include demolition work per se was, indeed, a legislative oversight, and second, that this is a proper forum in which such oversight may be corrected.

As to the first of these, it is clear that the purpose of the law, derived from its constitutional fundament, is to "secure to * * * laborers * * * their just dues by direct lien upon the property, upon which they have bestowed labor * * *." The statute, while qualifying and conditioning the lien right in considerable detail, seems supportive of this purpose in its recognition of the concept of protecting those whose labor works an "improvement, enhancement, or embellishment of real property." Initially, then, we must inquire whether demolition work, as such, may be said to so improve or enhance property, adding to its value by virtue of the labor bestowed upon it. If it cannot, then a principal purpose of the law is clearly not served by providing a right of lien to the demolitions laborer.

Whatever the answer to this inquiry might have been in the earlier years of this century when lien laws became general, recent economic experience in deteriorating urban areas indicates that in some circumstances, at least, demolition may indeed enhance the value of land. Here, for instance, the locus of the controversy is three parcels in Mt. Auburn, one of Cincinnati's older urban areas, possessed of a rich history but a problematical present, where it may well prove that cleared land available for new construction, which cannot be accomplished while deteriorated structures remain, is of greater value than the same land before de-

molition. Were such shown to be the case (although the record will not permit us to draw this conclusion in the instant appeal), then it could be said that the purpose of the legislature to make the lien available to those whose labor improved and enhanced the land would fully apply for the protection of demolition contractors and laborers.

This proposition may be said to have some added force as a result of the absence of any direct prohibition in the statute as to demolitions mechanic's liens. Indeed, that under appropriate facts a demolitions contractor *could* attach a lien for his work is borne out by the "grading and filling" provisions of R. C. 1311.02. Thus, where a contract is drawn providing for the grading and filling of urban land presently occupied by undesirable structures, and where it is clear that the work contemplated includes demolitions and drainage incident to and inseparable from such grading and filling, it may well be that the attachment of a mechanic's lien for work under the contract is not only intended, but mandated.[4]

It follows, so it seems to us, that the category of labor which plaintiff performed, in light of the realities of today's urban realty market, could well entitle him to a mechanic's lien within the intent and underlying purpose of the Ohio statute. Thus, we are led to conclude that the omission of demolitions per se from the work categories which are expressly entitled to the lien, and/or the failure to correct the omission by statutory amendment, could well be argued a legislative oversight.

As previously indicated, however, a second component issue remains to be resolved before disposing of this argument. It would appear that the broad question of whether a mechanic's lien can attach for demolitions work is one of first impression in Ohio, and certainly so within this district. While we are cited to various secondary and foreign

---

[4]Contra, *Bon Marche Realty Co.* v. *Southern Surety Co.* (1929), 152 Wash. 604, 608, 278 P. 679, 680: "The contractor was not 'clearing, grading or filling in' the property as these acts can only be performed on land not actually occupied by buildings." The accuracy or logic of this comment is not readily discernible.

authority[6] in support of the positions of both plaintiff and defendant, these authorities neither control nor particularly illuminate the problem except to reveal the difficulty other jurisdictions have experienced in resolving the question. Moreover, it can readily be appreciated that any action this court might take in indulging its individual philosophies, and in proposing relief, might well create more problems than it would solve.

The principle that legislative oversight, if such it be, ought to be corrected by legislation is well established. Our reading of the authorities, in conjunction with what seems to be the position of the Supreme Court of Ohio in strictly construing the statute against the putative lienor on the question of whether the lien attaches, suggests the exercise of judicial restraint. Accordingly, since we conclude that this court is not the proper forum in which to resolve the question, plaintiff's assignment of error is overruled. The judgment is affirmed.

*Judgment affirmed.*

SHANNON, P. J., and KEEFE, J., concur.

---

[6]In 53 American Jurisprudence 2d, Mechanics' Liens, Section 84, it is asserted that in the absence of a statute expressly providing for a demolitions lien, "the prevailing view is that mechanic's lien statutes confer no right" for work incident to the demolition of structures. Cases from Illinois, Massachusetts, Missouri, New York, Texas and Washington are cited in support of the proposition, while cases from Arkansas and California could arguably lead to the opposite result. In Demann, Ohio Mechanic's Lien Law 141, Section 6.17 (2d ed.), it is said: "* * * [T]he question * * * has not been determined in Ohio, whether * * * the statute confers a right of lien solely for the demolition of a building and the removal of the demolished structure * * *." The author recognizes the existence of the right only where the demolition and removal is "part of an indivisible contract for altering, erecting or repairing a structure." Two foreign cases are cited in support of the latter comment. The most recent annotation on the subject, found at 63 A. L. R. 1250 (1929), appears not to have been updated.