**BROWNING–FERRIS, INC., Plaintiff,**

v.

**ROCKFORD ENTERPRISES, INC., a Delaware corporation, Nason & Cullen, Inc., a Pennsylvania corporation, and Medical Center of Delaware, Inc., a Delaware corporation, owner or reputed owner, Defendants.**

C.A. No. 91L–12–33.

Superior Court of Delaware,
New Castle County.

Submitted: April 8, 1993.
Decided: July 2, 1993.

James T. McKinstry, Peter L. Fratterelli and Claudia A. DelGross, Richards, Layton & Finger, Wilmington, for plaintiff.

Steven D. Goldberg, Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, for Nason & Cullen, Inc., and Medical Center of Delaware, Inc., Defendants.

### OPINION

COOCH, Judge.

Browning–Ferris, Inc. ("BFI") filed this action seeking a mechanics' lien against defendants Rockford Enterprises, Inc. ("Rockford"), Nason & Cullen, Inc. ("N & C") and the Medical Center of Delaware, Inc. ("Medical Center") and also seeking an *in personam* judgment against Rockford for the balance of payments allegedly owing under a contract between BFI and Rockford for the removal and disposal of demolition debris from Wilmington Hospital. BFI has moved for summary judgment on its mechanics' lien claim pursuant to Super.Ct.Civ.R. 56 on the grounds that there are no genuine issues of

material fact and that it is entitled to a mechanics' lien as a matter of law. In response, N & C and Medical Center have filed cross motions for summary judgment, asserting that BFI is not entitled, as a matter of law, to a mechanics' lien for its demolition labor. N & C and Medical Center also aver that, if the Court should find BFI is entitled to a mechanics' lien, there are nevertheless genuine issues of material fact as to whether all the work claimed by BFI was actually performed at Wilmington Hospital.

For the reasons stated herein, the Court denies BFI's motion for summary judgment and grants summary judgment to N & C and the Medical Center on their cross motions for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Wilmington Hospital, which is owned by Medical Center, is located generally at 12th and Washington Streets in Wilmington, Delaware. Wilmington Hospital is a multi-story building, portions of which have recently undergone renovation. Certain demolition and removal work done in conjunction with these renovations is the subject of the instant litigation.

On June 28, 1991, Medical Center and N & C entered into a contract for the renovation of certain areas of Wilmington Hospital. On July 8, 1991, N & C, general contractor on the project, entered into a contract with Rockford, a demolition company, pursuant to which Rockford would perform the demolition work necessary for the project. Rockford's portion of the project involved only the demolition and removal of certain internal portions of the hospital structure, not the hospital structure itself; Rockford did not contract to perform any construction on the project. Specifically, the contract between N & C and Rockford required Rockford to:

> [P]rovide all labor, material, equipment and services necessary for all demolition work on the 1st, 5th, and 6th floors of the Wilmington Hospital per plans, specifications, and addendums listed in the Contract Documents in attached Exhibit "E."

On December 19, 1990, prior to the above contract with N & C, Rockford had entered into a contract with BFI in which BFI agreed to haul and dispose demolition debris on behalf of Rockford at sites designated by Rockford. In return, Rockford agreed to pay BFI a fee of $85 per haul, along with any disposal costs associated with depositing the debris in local landfills.

Pursuant to its contract with Rockford and at Rockford's direction, BFI began delivering dumpsters to the Wilmington Hospital site. Rockford employees filled the dumpsters with demolition debris from the hospital and hauled the debris from the Wilmington Hospital premises to local landfills and returned empty dumpsters to the site for future use.

Pursuant to the BFI–Rockford Contract, BFI sent Rockford weekly invoices for this service. However, many of the invoices went unpaid by Rockford, some or all of which were for work done at Wilmington Hospital. On January 14, 1992, BFI filed an amended complaint and statement of claim for a mechanics' lien against Rockford, Medical Center and N & C seeking a mechanics' lien and an *in personam* judgment against Rockford in the amount of $57,324.34.

On July 14, 1992, this Court, upon motion by BFI, ordered summary judgment entered against Rockford on Count II (the *in personam* claim) in the amount of $57,324.34, plus interest and attorneys' fees, and on August 26, 1992, the Court, upon motion by N & C and Medical Center, ordered the discharge of the mechanics' lien upon the entry of a security bond pursuant to 25 *Del.C.* § 2737.

BFI filed the instant motion for summary judgment against N & C and Medical Center on December 18, 1992 on the grounds that there are no genuine issues of material fact and that BFI's labor in connection with the removal of debris from Wilmington Hospital entitles it, as a matter of law, to a mechanics' lien under 25 *Del.C.* § 2702.

In response, N & C and Medical Center filed a joint cross motion for summary judgment denying that BFI is entitled to a mechanics' lien as a matter of law and further averring that, even if BFI were entitled to a mechanics' lien, that genuine issues of mate-

rial fact exist as to whether the amount ($57,324.34) claimed by BFI actually represents work performed exclusively at Wilmington Hospital. N & C and Medical Center argue that 1) BFI is not entitled to a mechanics' lien as a matter of law for demolition work under 25 *Del.C.* § 2702; 2) BFI is not entitled to a mechanics' lien under 25 *Del.C.* § 2702 because BFI did not furnish either "labor" or "materials" but rather "leased" the dumpsters to Rockford; 3) BFI's claims are time-barred; 4) BFI is not entitled to a mechanics' lien because neither labor nor materials were furnished on the "credit of the structure"; and 5) BFI is not entitled to a mechanics' lien because it failed to "adequately describe the property" as required by 25 *Del.C.* § 2712(b)(7).

In reply, BFI argues that 1) demolition work is covered under 25 *Del.C.* § 2702; 2) BFI's lien is for "labor" as opposed to "equipment leased" and thus covered under the mechanics' lien statute; 3) BFI's claims are not time-barred; 4) BFI's labor was furnished on the "credit of the structure"; and 5) BFI's description of the property was adequate.

## II. DISCUSSION

The question of whether demolition work is properly lienable under the Mechanics' Lien Act is a question of first impression in Delaware.

■ Upon a motion for summary judgment, the Court must view the facts and all reasonable inferences in a light most favorable to the non-moving party. Super.Ct.Civ.R. 56(c); *In re Asbestos Litigation,* Del.Super., 509 A.2d 1116, 1118 (1986), *aff'd Nicolet, Inc. v. Nutt,* Del.Supr., 525 A.2d 146 (1987). The Court will grant summary judgment only if the pleadings and the record show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Super.Ct.Civ.R. 56(c); *Moore v. Sizemore,* Del.Supr., 405 A.2d 679, 680 (1979). Also, where the non-moving party bears the ultimate burden of proof, summary judgment may be granted if the moving party can demonstrate a "complete failure of proof" concerning an essential element of the non-

moving party's case. *Burkhart v. Davies,* Del.Supr., 602 A.2d 56, 59 (1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)); *Hammond v. Colt Industries Operating Corp.,* Del.Super., 565 A.2d 558, 561 (1989).

■ In a case involving cross motions for summary judgment, the parties implicitly concede the absence of material factual disputes and acknowledge the sufficiency of the record to support their respective motions. *See Merrill v. Crothall–American, Inc.,* Del. Supr., 606 A.2d 96, 100 (1992) (stating that parties implicitly concede the non-existence of factual disputes upon their filing of cross motions for summary judgment, citing *Fiduciary Trust Co. v. Fiduciary Trust Co.,* Del. Supr., 445 A.2d 927 (1982)). Thus, in the instant case, the parties have implicitly conceded the absence of any material factual disputes, except for the issue of whether BFI's claimed damages are for work exclusively at Wilmington Hospital.

Although the parties have raised other issues, the Court concludes, for the reasons stated herein, that the only issues necessary for determination are 1) whether work incident to demolition is lienable under § 2702 of the Delaware Mechanics' Lien Act and 2), if demolition work is not otherwise lienable, whether the Court should recognize an exception in this case because the demolition was done pursuant to a general plan of renovation.

### A. Labor Incident to Demolition is Not Lienable Under 25 Del.C. § 2702

In 1861, the General Assembly enacted into law "[a]n Act securing to Mechanics and others payment for labor and materials in erecting or repairing any building or structure within the State of Delaware" (hereinafter "the Act"). 12 *Del.Laws,* c. 117, codified at 25 *Del.C.* §§ 2701–2737. The Act provides, *inter alia,* a statutorily created lien against an owner of property in favor of certain persons who performed labor or who provided materials "in or for" the property. 25 *Del.C.* § 2702. Section 2702 provides as follows:

**§ 2702. Persons entitled to obtain lien.**
(a) It shall be lawful for any person having performed or furnished labor or material, or both, to an amount exceeding $25 in or for the *erection, alteration, or repair* of any structure, in pursuance of any contract, express or implied, with the owners of such structure or with the agent of such owner or with *any contractor who has contracted for the erection, alteration or repair* of the same and for the furnishing of the whole or any part of the materials therefor, including any person who has performed or furnished labor or material, or both, *for or at* such structure under a *contract with or order from any subcontractor* to obtain a lien upon such structure and upon the ground upon which the same may be situated or erected.

25 *Del.C.* § 2702 (emphases added).

■ BFI argues that Rockford's demolition work constitutes an "alteration" under § 2702(a) and that BFI "furnished labor" "in or for" the Wilmington Hospital "structure" pursuant to a "contract with" Rockford, a "subcontractor." As a result, BFI argues, its "labor," i.e. delivering, removing and emptying the dumpsters, was furnished "for" the "alteration" of Wilmington Hospital, and is thus lienable under § 2702(a).

In opposition, N & C and Medical Center argue that Rockford's demolition work was not "erection, alteration or repair" within the meaning of § 2702, and therefore BFI does not fall within the parameters of those persons entitled to a lien under § 2702.[1]

Clearly, § 2702(a) does not include the language "demolition," "removal" or words of similar import. Rather, the operative words are limited to "erection, alteration or repair." These words are not otherwise defined in the Act. *See* 25 *Del.C.* § 2701. The reach of § 2702(a) depends on the proper interpretation of the term "alteration." *See Pioneer Nat. Title Ins. Co. v. Exten Associates, Inc.,* Del.Supr., 403 A.2d 283, 284 (1979) (concluding that the issue of whether a bulkhead was lienable under § 2702(a) depends on the interpretation of the term "structure").

■ It is well established that the Act, as a statutory remedy in derogation of the common law, is to be strictly construed. *Gould, Inc. v. Dynalectric Co.,* Del.Super. 435 A.2d 730, 732 (1981) (concluding that as a statutory remedy in derogation of common law, the Act provisions must be strictly construed); *Iannotti v. Kalmbacher,* Del.Super., 156 A. 366, 368 (1931) (holding that the Mechanics' Lien Act must be strictly construed "especially as to the obtaining and existence of the lien"); *Heitz v. Sayers,* Del.Super., 113 A. 901, 902 (1921) (concluding that Mechanics' Lien laws are to be strictly construed and pursued). *See also Pioneer,* 403 A.2d at 285 (applying the "statutory rule of strict construction"). Indeed, shortly after the enactment of the Act, this Court commented on its judicial role with respect to interpreting the Act:

> "Both our inclination and conviction of duty, therefore, is not to extend the operation of the act by construction any further than the terms of it clearly require, and to leave it to the legislature to remedy whatever defect or deficiencies may be found to attend it when put into practical operation and effect." We are therefore not to stretch the act beyond the limit fixed by it.

*McCartney v. Buck,* Del.Super., 12 A. 717, 719 (1887) (quoting *Capelle v. Baker,* Del.Super., 3 Houst. 344, 356 (1866)). This rule of strict construction is especially appropriate in light of the nature of the remedy that the Act provides. As was stated in *Heitz:*

> "Statutory provisions permitting the summary enforcement of private charges, such as mechanics' liens, on property without the consent of the owner or judicial sanction cannot be extended in their operation beyond the plain and fair sense of the terms in which they are expressed."

*Heitz,* 113 A. at 902 (quoting *Phillips on Mechanics' Liens,* § 18).

■ Although the word "alteration" may be used broadly in everyday usage, the Court must strictly apply the term as it appears in the context of the Act. *See Pioneer,* 403 A.2d at 285 (concluding that although the

---

1. N & C and Medical Center also argue that Rockford's use of the BFI dumpsters constituted a "rental" or "lease" but not "labor," and that

the property is thus not lienable. However, for the reasons set forth in this Opinion, the Court need not reach this issue.

word "'structure' is one of the broadest words in the English language," courts must, under the statutory rule of strict construction, apply that word in the context of the Act). The term "alteration" connotes a building up or adding to the value of the structure by the labor or materials provided. *See Fehr Construction Co. v. Postl System of Health Building,* 288 Ill. 634, 124 N.E. 315, 317 (1919) (concluding that improvements which "add" to the height or depth of a building are repairs or alterations within the meaning of the Illinois Mechanics' Lien Act).

One prominent authority has defined "alteration" as follows:

Variation; changing; making different. A change of a thing from one form or state to another; making a thing different from what it was *without destroying its identity.*

*Black's Law Dictionary* 77 (6th ed. 1990) (emphasis added). Similarly, "alteration" has also been defined as:

... a change or changes within the superficial limits of an existing structure; an installation that becomes an integral part of the building and changes its structural quality; a substantial change therein; a varying or changing the form or nature of such building without destroying its identity.

*Paye v. City of Grosse Pointe,* 279 Mich. 254, 271 N.W. 826, 827 (1937) (citations omitted).

Indeed, the purpose of the Act has been held to allow a lien against a building and land for the value of the labor and materials which "actually" become part of the building. *Girdler Corp. v. Delaware Compressed Gas Co.,* Del.Super., 183 A. 480, 482 (1936) (holding that claimant who performed engineering services was not entitled to a lien since the services performed did not "actually" become part of the building).

2. Although BFI does not specifically argue that its work is lienable as "repair" pursuant to § 2702(a), the Court notes a following definition of "repair":

To mend, remedy, restore, renovate. To restore to a sound or good state after decay, injury, dilapidation, or partial destruction ... The word "repair" contemplates an existing structure or thing which has become imperfect, and means to supply in the original exist-

In contrast, "demolish" has been defined as:

To throw or pull down; to raze; to destroy the fabrication of; to pull to pieces; hence to ruin or destroy ... [t]o destroy totally or to commence the work of total destruction with the purpose of completing the same.

*Black's Law Dictionary* 432 (6th ed. 1990) (citation omitted).

While demolition is often the necessary antecedent of construction or restoration, demolition in and of itself does not add to the structure. Demolition does not merely alter a building or portion thereof but goes beyond alteration in that it destroys the identity of the building or portion thereof. This is so in connection with the "erection, alteration or repair" of a building or structure. Any labor and materials expended for the demolition aspect of the renovation, as well as any labor or materials incident thereto (removal and disposal of the debris), did not "actually" become part of the Wilmington Hospital. Accordingly, the inclusion of demolition work within the ambit of "erection, alteration or repair" enlarges the scope of the Act beyond the limits fixed by the General Assembly. *See Girdler,* 183 A. at 482 (observing that an engineer's services did not clearly come within the purview of the Act and holding that, in light of the rule of strict construction, the claimant was not protected by the Act).[2]

Other authorities are in agreement with this Court's approach, and the general rule has been summarized as follows:

In the absence of express statutory authorization, the prevailing view is that a mechanic's lien may not be founded upon a claim for labor expended or materials furnished for the mere removal or demolition of a building or other structure, although

ing structure that which is lost or destroyed, and thereby restore it to the condition in which it originally existed, as near as may be. *Black's Law Dictionary* 1298 (6th ed. 1990). As with the Court's foregoing analysis of "alteration," demolition is often the necessary antecedent of "repair" but demolition in and of itself does not result in services performed that "actually" become part of the building. *See Girdler,* 183 A. at 482.

the courts in a number of cases have indicated that a claim for removal or demolition of a building or other structure may be lienable where such work was performed pursuant to a contract or plan of construction ...

Annotation, *Removal or Demolition of Building or Other Structure as Basis for Mechanic's Lien*, 74 A.L.R.3d. 386, 390–91 (1976). *See also Dean v. McFarland*, 81 Wash.2d 215, 500 P.2d 1244 (1972) (interpreting similar terminology and holding that demolition work was not lienable).[3]

It is also noteworthy that § 2702(b) identifies specific types of additional labor, not covered under the general language of § 2702(a), but fails to include demolition therein.[4] In addition, although the General Assembly has periodically amended the Act, it has never specifically authorized the lienability of demolition or removal labor.[5] *Compare* 25 *Del.C.* §§ 2701 and 2702, *with PA. Stat.Ann.* tit. 49, § 1201(12)(a) (1965) (which latter statute provides a right to a mechanics' lien for "labor or materials furnished in the erection or construction or the alteration or repair"). However, unlike the Delaware Act, the Pennsylvania Act defines those terms as follows:

(12) "Erection, construction, alteration or repair" includes:

(a) Demolition, removal of improvements, excavation, grading, filling, paving and landscaping, when such work is incidental to the erection, construction, alteration or repair; ...

*PA.Stat.Ann.* tit. 49, § 1201.

The Court is also persuaded to hold demolition work not lienable in part by the fact that in other jurisdictions in which demolition labor is lienable, those state legislatures have usually enacted mechanics' lien laws which include language such as "removal" or "demolition." *See Ill.Rev.Stat.* ch. 82, para. 1. (1985); *National Wrecking Co. v. Midwest Terminal Corp.*, 234 Ill.App.3d 750, 176 Ill. Dec. 301, 308, 601 N.E.2d 999, 1006 (1992) (holding that an amendment to Illinois mechanics' lien law that changed the definition of persons entitled to a lien to include "anyone who contracts to remove any house or structure" put demolition within the purview of that statute); *see also PA.Stat.Ann.* tit. 49, § 1201(12)(a); *see also King's Oak Liquidators v. Bala Cynwyd Hotel Associates*, Dist.Ct., 7 Pa.D. & C.4th 634 (1990), *aff'd* 405 Pa.Super. 250, 592 A.2d 102 (1991) (concluding that although demolition work incident to construction is lienable, services preparatory to demolition are not).

In sum, the General Assembly has not enacted any language warranting the lienability of demolition or removal labor. *See Dean*, 500 P.2d at 1248 (noting that "the exact phraseology of the [Washington] mechanics' lien statute is of utmost importance" and further holding that if such language is to be "extended to other classes of lienors, it must be done by the legislature, not by judicial fiat"). The Court thus concludes that "demolition" is generally not lienable as an "erection, alteration or repair" under the Act.

## B. BFI is Not Entitled to a Mechanics' Lien Even Though the Demolition Occurred Pursuant to a General Plan of Restoration.

■ As discussed *supra*, the "prevailing view" is that, in the absence of specific statutory authorization, a mechanic's lien will not lie for removal or demolition work. Some

---

**3.** This case is discussed at greater length at pp 15–17 of this Opinion.

**4.** Section 2702(b) provides:
(b) Liens may also be obtained in connection with: labor performed and materials furnished in plumbing, gas fitting, paper hanging, paving, placing iron works and machinery of every kind in mills and factories, bridge building, the erection, construction and filling in of wharves, piers and docks and erecting banks and the services rendered and labor performed and materials furnished by architects.

25 *Del.C.* § 2702(b). Although, as BFI points out, this Court has previously concluded that § 2702(b) is not an "exclusive" list, *see Wilmington Trust Co. v. Branmar, Inc.*, Del.Super., 353 A.2d 212, 216 (1976), this is true only to the extent that a putative lienor's labor comes within the scope of the general operative language of § 2702(a).

**5.** See *Pioneer*, 403 A.2d at 284–85 for a review of the legislative history of the Act.

courts, however, have created an exception for removal or demolition work if such work was performed "pursuant to a contract or plan of construction." 74 A.L.R.3rd at 390–391. BFI argues the applicability of that exception to this Court.

BFI thus directs the Court to *Arthur Morgan Trucking Co. v. Shartzer,* 237 Mo.App. 535, 174 S.W.2d 226 (1943), in which an exception for demolition done pursuant to a general contract for construction was recognized. BFI urges the Court to adopt the exception enunciated in *Arthur* and to hold that BFI's labor, in conjunction with Rockford's demolition, was pursuant to a general plan of renovation at Wilmington Hospital and thus lienable. *See Arthur,* 174 S.W.2d at 228 (holding that where the demolition of an existing building is a necessary preparatory step to the erection of the new building, demolition work is lienable).

The *Arthur* court reasoned that the demolition and/or removal of old material actually represents the cost of labor that goes into the construction of the new building since it would be impossible to erect the new building without removing the old. *Arthur,* 174 S.W.2d at 228. Although this reasoning in the context of the Missouri Mechanics' Lien Law may be sound, *Arthur* is distinguishable.

First, Missouri is a jurisdiction whose Mechanic's Lien statute is to be "liberally construed." *Arthur,* 174 S.W.2d at 227. In contrast, Delaware courts invoke a rule of strict construction. Thus, the analytical framework on which the *Arthur* court's holding is based is inapposite in light of Delaware's well-established rule of strict construction.

Second, a close reading of *Arthur* reveals that the court interpreted statutory language which was broader in terms of the type of work covered then that of § 2702(a). Specifically, the *Arthur* court interpreted the following operative language:

Every mechanic or other person, who shall do or perform *any work or labor upon* . . . any building, erection or improvements upon land . . . under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor . . . shall have for his work or labor done . . . *a lien upon such building, erection or improvements,* and upon the land belonging to such owner or proprietor on which the same are situated, . . .

*Arthur,* 174 S.W.2d at 227 (quoting in part *Mo.Rev.Stat.* § 3546 (1939)) (emphases added). Thus, the language interpreted by *Arthur* ("any work or labor upon" . . . "any building") itself suggests a conclusion that demolition work includes "any work" and thus is lienable. In contrast, § 2702 specifies the limited type of work which is lienable, such work being "labor . . . in or for the erection, alteration or repair of any structure." Thus, in light of these distinctions, the *Arthur* court's analysis and subsequent holding are not analogous to the case at bar.[6]

In contrast to *Arthur* is an Ohio Court Of Appeals' holding in *John F. Bushelman Co. v. Troxell,* 44 Ohio App.2d 365, 338 N.E.2d 780 (1975). In *Bushelman,* a wrecking company performed work incident to the demolition of certain structures, and, when unpaid, sought a mechanic's lien for its demolition work. The *Bushelman* court, denying the lien, observed that its "reading of the Ohio Supreme Court in strictly construing the statute against the putative lienor on the question of whether the lien attaches, suggests the exercise of judicial restraint." *Bushelman,* 338 N.E.2d at 783. "Judicial restraint" seems equally appropriate here.

The Court is also persuaded by *Dean v. McFarland,* 81 Wash.2d 215, 500 P.2d 1244 (1972), a case both factually and legally analogous to the instant matter. In *Dean,* a property owner contracted with a general contractor to demolish an existing structure and to erect a multi-dwelling unit. The gen-

---

**6.** The *Arthur* court asserted that the "great weight of such authority coincides with our views." *Arthur,* 174 S.W.2d at 228. However, a review of the cases cited by *Arthur* reveals that many of the lien statutes interpreted by those courts contain language different than § 2702. In addition, many of these cases cited by *Arthur* are from jurisdictions which follow a rule of liberal construction. Thus, the Court finds that any authority from other jurisdictions is only persuasive to the extent that those jurisdictions have the same or similar operative language as well as the same rule of construction.

eral contractor, in turn, employed a subcontractor to demolish the building. The general contractor also employed the McFarland Company to supply trucks and drivers to remove any resulting debris. Pursuant to these arrangements, the building was demolished and McFarland removed the debris. In the meantime, however, the general contractor disappeared without paying either subcontractor or McFarland. After failing to receive payment, McFarland filed a claim for a mechanics' lien for the balance due, but the trial court found that McFarland was not entitled to such lien.

On appeal, the Washington Supreme Court was presented with the issue of whether McFarland Company's demolition work was lienable. The authorizing language under the then existing Washington Mechanics' Lien Statute was almost identical to that of § 2702(a). The *Dean* court interpreted the following language:

> ... renting, leasing or otherwise supplying equipment to be used in construction, alteration or repair of any ... building ...

*Dean,* 500 P.2d at 1246 (quoting in part *Wash.Rev.Code* § 60.04.010). Also noteworthy is the fact that Washington, like Delaware, has adopted the rule of strict construction when interpreting its mechanics' lien laws. *Id.* at 1247.

The *Dean* court was also urged to adopt reasoning of *Arthur* and to overrule its previous decision of *Sound Transfer Co. v. Phin-*

*ney Realty and Invest. Co.,* 71 Wash. 473, 128 P. 1047 (1913), in which the Washington Supreme Court had held that demolition work pursuant to a general plan of construction or erection was not lienable.[7] The *Dean* court, noting that *Arthur* was decided under a statute with different language, declined to overrule *Sound,* stating:

> A lien of the type here is a creature of statute and is in derogation of the common law. As such, it must be strictly construed to determine whether a lien attaches ... The statutory operation is not to be extended for the benefit of those who do not *clearly* come within the terms of the statute ... The type of work performed by appellant does not come within the terms of [the statute], thus, he is not entitled to a lien thereunder.

*Dean,* 500 P.2d at 1247 (citations omitted) (emphasis in original).[8]

Similarly, BFI's labor, which was incident to Rockford's demolition work, does not come within the terms of § 2702 since demolition does not "clearly" come within the purview of the Act. *See McCartney,* 12 A. at 719 (concluding that the coverage of the act is not to be extended for the benefit of those who do not "clearly" come within its terms). Accordingly, this Court finds, as did the *Dean* court, that an exception to the general rule excluding demolition from coverage under the Act is not warranted.[9]

---

7. In *Sound,* the court had held that although a laborer contracted with the owner to construct a building upon a site already occupied by another structure, and as part of the same contract, the labor required was to remove the old structure, nevertheless demolition and removal of the old building was not lienable. *Sound,* 128 P. at 1048.

8. The court in *Dean* also pointed out that McFarland, the subcontractor-putative lienor (like BFI), was in a less favorable position than the contractor in *Sound. Dean,* 500 P.2d at 1246. In *Dean,* McFarland, like BFI, did not have a contract with the property owner nor did it have a contract to construct a building on the site as an integral part of which it was required to demolish and remove the existing structure. Thus, the removal of debris in *Dean,* as in this case, was not done as part of or related to an overall contract of the removal of debris of the putative lienor with the general contractor or the property owner.

9. Assuming *arguendo* that Rockford's demolition work would be covered pursuant to the *Arthur* exception, BFI's removal and disposal of demolition debris was not pursuant to a contract (written or oral) for the "erection, alteration or repair" of the Hospital, but was pursuant to a contract with Rockford, which BFI had entered into prior to Rockford's contract with N & C, for the removal and disposal of debris from any construction sites designated by Rockford. The contract was of three years' duration and was not a site-specific contract. *See Dean,* 500 P.2d at 1246 (concluding that McFarland "possessed, at best, a contract merely to remove debris, from which acts the site benefited [sic]"). Thus, BFI's work does not "clearly" come within the terms of the Act even if the Court were to adopt the *Arthur* exception since BFI's work was not performed pursuant to a general plan of construction or restoration; rather, it was performed in the context of its ongoing agreement with Rockford.

■ The Court is not persuaded by BFI's arguments for recognition of an exception to the general rule that demolition is not lienable in the absence of statutory language specifically authorizing it. BFI's argument calls for an expansion of the existing Act. Such an expansion must be clearly pronounced by the General Assembly so that all parties to a transaction "may be aware of the scope of their contractual responsibilities." *See Gould,* 435 A.2d at 733 (concluding that in light of the requirement of strict interpretation, the assignability of an unperfected mechanics' lien is not authorized under Delaware law and may not be permitted in the absence of clear legislative expression). Thus, BFI is not entitled to a mechanics' lien.

### III. CONCLUSION

The Court concludes that in light of the requirement of strict construction, the Act is not to be extended to those persons who perform demolition labor. Having found that BFI's "labor" does not come within the terms of § 2702, BFI is not entitled to a mechanic's lien. Accordingly, BFI's motion for summary judgment is denied and the cross motions for summary judgment of N & C and Medical Center are granted.