Peter A. McKNIGHT and, Janis K. McKnight, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

USAA CASUALTY INSURANCE COMPANY, Defendant.

C.A. No. 04C–09–134–SCD.

Superior Court of Delaware, New Castle County.

Submitted: March 2, 2005.

Decided: March 22, 2005.

John S. Spadaro, Murphy Spadaro & Landon, Wilmington, DE, for Plaintiffs.

Sherry Ruggiero Fallon, Tybout Redfearn & Pell, Wilmington, DE, for Defendant.

## *OPINION*

DEL PESCO, J.

This dispute arises in connection with a claim for coverage under a homeowners' insurance policy issued by USAA Casualty Insurance Company ("defendant") to Peter A. McKnight and Janis K. McKnight ("plaintiffs"). The plaintiffs experienced a water accumulation in the basement of their home which resulted in the development of mold and fungi in the residence. They claim damages to the full extent of liability coverage under the policy. The defendant relies on the Mold and Fungus

coverage provision of the policy which specifically limits property damage to $2,500 and loss of use to $2,000, as well as a related policy exclusion, in denying plaintiffs' claim in excess of those limits.

The parties have filed cross motions for summary judgment. By so doing, they acknowledge that there are no issues of material fact.[1] Both argue that the contract of insurance can be interpreted as a matter of law, although the plaintiffs argue that the contract is ambiguous, and the defendant argues that it is not.

The policy issued to the plaintiffs in 1994 was renewed annually thereafter. In 2002 it was amended. That amended policy was renewed in 2003, the year of the loss at issue here. While the parties have directed much attention in their briefs to the policy provisions that preceded the amendment, the amended policy controls. I will not focus on the pre-amendment language.

Under Delaware law, the interpretation of contractual language, including that in insurance policies, is a question of law for the Court to decide.[2] If there is ambiguity, "... the doctrine of *contra proferentum* requires that the language of an insurance contract be construed against the insurance company that drafted it."[3]

A contract term is ambiguous when it can be assigned more than one reasonable meaning.[4] Clear and unambiguous language in insurance contracts will be given its plain and ordinary meaning.[5] The Court should not "destroy or twist policy language under the guise of construing it."[6] Creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented.[7]

Construction of an insurance contract "must rely on a reading of all of the pertinent provisions of the policy as a whole, and not on any single passage in isolation."[8] Contract terms, therefore, should not be interpreted so to render them illusory or meaningless.[9]

### Policy Provisions

The pertinent parts of the contract of insurance are as follows, with my comments in italics:

**Declarations:** *this page reflects the limits of liability for parts A, C, and D.*

> Section I    A $299,000
> C $224,500
> D UNLIMITED [10]

**Agreement:** *this section is the simplest, it is one sentence:* "In return for payment of premium and subject to all terms of this policy, we will provide the insurance described."[11]

1. *Browning–Ferris, Inc. v. Rockford Enterprises, Inc.*, 642 A.2d 820, 823 (Del.Super.1993) (internal citation omitted).

2. *O'Brien v. Progressive Northern Ins. Co.*, 785 A.2d 281, 286 (Del.2001).

3. *Rhone–Poulenc Basic Chemicals Co. v. American Motorists Ins.*, 616 A.2d 1192, 1196(Del.1992).

4. *Twin City Fire Ins. Co. v. Delaware Racing Assn.*, 840 A.2d 624, 628 (Del.2003).

5. *Rhone–Poulenc*, 616 A.2d at 1195.

6. *Id.*

7. *Id.* at 1196.

8. *O'Brien*, 785 A.2d at 287 (internal citation omitted).

9. *Id.* (internal citations omitted).

10. *See* p. 47 of Appendix to Plaintiffs' Opening Brief, D.I. 4 (hereinafter "A").

11. A5.

**Definitions:** *none at issue.*[12]

**Section I—Property Coverages:**

Coverage A—Dwelling

Coverage B—Other Structures [*not pertinent*]

Coverage C—Personal Property

Coverage D—Loss of Use

ADDITIONAL COVERAGES

*The plaintiffs' claim is for A, C, and D. The ADDITIONAL COVERAGES provision of the policy sets forth a series of items for which a capped level of coverage is provided. Important to this discussion is Mold or Fungus:*

Mold or Fungus. We will pay up to:

a. a total of $2,500 for direct physical loss to property covered under Section I Coverage A—Dwelling, Coverage B—Other Structures and Coverage C—Personal Property caused by or consisting of mold or fungus if the mold or fungus is the direct result of a Peril Insured Against. This coverage does not apply if the loss results from the Insured's failure to reasonably maintain or protect the property from further damage following a covered loss; and

b. $2,000 for necessary increase in costs which you incur to maintain your normal standard of living when the residence premises is uninhabitable due to a loss caused by or consisting of mold or fungus which is the direct result of a Peril Insured Against.

The coverages provided above are the only coverages under Section I Coverage A—

Dwelling, Coverage B—Other Structures, Coverage C—Personal Property and Coverage D—Loss of Use for damage or loss caused by or consisting of mold or fungus caused directly or indirectly (sic)[13] regardless of any other cause or event contributing concurrently or in any sequence.

This coverage is additional insurance. No deductible applies to this coverage.[14]

**Section I—Perils Insured Against**

Coverage A—Dwelling

Coverage B—Other Structures

Coverage C—Personal Property

*This provision states the general proposition that the policy insures "against risks of direct, physical loss to property described in Coverages A and B," then identifies a series of exceptions. The general proposition applies to this claim.*

Coverage A and B:

3. [We do not insure loss] caused or consisting of:

\* \* \* \*

e. discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under coverage C of this policy.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.[15]

Coverage C—Personal Property

We insure for direct physical loss to the property described in coverage C caused

---

**12.** A5, A31, A40.

**13.** This awkward sentence is troubling. The words "caused directly or indirectly" seem to be surplus, but they do not create an ambiguity given the facts of this case.

**14.** A42.

**15.** A10–11.

by a peril listed below unless the loss is excluded in SECTION I—EXCLUSIONS.[16]

\* \* \* \*

12. Accidental discharge or overflow of water. . . . [17]

*Both parties agree, albeit for different reasons, that the claims here are* Perils Insured Against, *as required for Coverages A and B, and meet the predicate for Coverage C.*

**Section I—Exclusions**

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.[18]

\* \* \* \* \*

i. Microbial organisms, including but not limited to mold, mold spores, fungus, bacterium, parasitic microorganisms and wet or dry rot other than as provided in ADDITIONAL COVERAGES, Mold or Fungus.[19]

*Plaintiffs' Contentions*

Plaintiffs argue that the water discharge which occurred in their home is covered as a Peril Insured Against based on the policy language related to Pollution. Section I–Perils Insured Against, subsection 3.e. exempts losses caused by "discharge, dispersal, seepage, migration, release or escape of pollutants" **unless** the discharge . . . is caused by a Peril Insured Against under Coverage C, 12 "Accidental discharge or overflow of water. . . ."[20] They argue that mold and fungi are pollutants and that the water caused the pollutants to spread throughout the house. Consequently, they claim the right to recover the Coverage A and Coverage C limits.

As to the policy amendment, Plaintiffs argue that the provision of ADDITIONAL COVERAGES means that the coverage is in addition to, and does not limit, the above described coverage. They further argue that since Exclusion i. is effective "other than as provided in ADDITIONAL COVERAGES, Mold or Fungus," the exclusion does not limit the recovery available for a pollutant.

Plaintiffs also advance a theory of estoppel. In essence, they charge that the defendant is not permitted to deny the coverage which the plaintiffs reasonably believed they had purchased.

At oral argument, Plaintiffs' counsel acknowledged that the exclusion for microbial organisms set forth in Section I—Exclusions 1.i. covers all the organisms related to this loss.

*Defendant's Contentions*

Defendant argues that the water loss at issue here is a Peril Insured Against, and that Exclusion i., by its unambiguous terms, limits benefits to the sums provided in the ADDITIONAL COVERAGES, Mold or Fungus provision of the policy. In addition, there is a specific exclusion, except to the extent provided under ADDITIONAL COVERAGES.

Defendant further argues that there can be no estoppel if policy provisions are unambiguous.

*Discussion*

■ The structure of this insurance policy is to provide coverage for a dwelling

16. A11.

17. A12.

18. *Id.*

19. A42.

20. A11.

and personal property up to certain limits (which increased annually, presumably to keep pace with inflation), and to segregate mold and fungus related claims.

Section I—Property Coverages does two things: it describes the coverages available for the dwelling and personal property, and it also describes ADDITIONAL COVERAGES. Those additional coverages are related to a number of miscellaneous items. The ADDITIONAL COVERAGES are not governed by the Declarations page of the policy. They contain their own liability limits, and indicate whether or not the policy deductible is applicable.[21]

The policy in effect at the time of this loss covered a loss from the discharge of water as a Peril Insured Against. But it also contained a specific exclusion for Microbial organisms which is defined in a way which, it is undisputed, includes the sources of the losses in this case. The Microbial organisms exclusion precludes all coverage "other than as provided in ADDITIONAL COVERAGES, Mold or Fungus," which contains its own dollar limits.

▮ In support of its argument that the pollution exclusion applies to this claim, the plaintiffs attach documents from, *inter alia*, the Center for Disease Control, which explain the hazards of molds and fungi. The Court is asked to take judicial notice of the fact that mold and fungi are irri-

tants and contaminants within the terms of the pollution exclusion. Plaintiffs overlook the policy definition of pollutants as "including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."[22] By listing the specific items, the insurance company is deemed to have excluded items not listed.[23] Mold and/or fungi are not within the definition of pollutant, and the contract will not be construed to modify the terms of the contract.

It is clear when reviewing the series of documents presented in connection with these cross-motions that defendant considered itself vulnerable for mold-related losses in 2002 when the policy was amended. Such losses were the subject of media attention a few years ago,[24] and the policy amendments no doubt were generated because of the public attention. But the fact remains, the policy **was** amended, and the amendment accomplished a belt-and-suspenders remediation of the perceived problem. The amended policy provided mold-related coverage, with specific limits, in the ADDITIONAL COVERAGES provision, while at the same time adding a clear exclusion for just the type of losses at issue here.

▮ Plaintiffs' estoppel argument is unpersuasive. "[I]t is a well-settled rule that when the clear and unambiguous terms of an insurance policy preclude coverage, a policyholder cannot create coverage by as-

---

21. Lock Replacement is an example of such an ADDITIONAL COVERAGE:

  9. Lock Replacement. When the dwelling door keys are stolen in a covered theft loss, we will pay the cost to:
  a. change the combination in the lock cylinder of the door locks as needed; or
  b. change the lock hardware of the doors as needed.
  The limit of liability for Lock Replacement is $250. No deductible applies to this coverage. A9.

22. A7.

23. *Cooper v. American Family Mutual Ins. Co.*, 184 F.Supp.2d 960, 965 (D.Ariz.2002).

24. *See e.g.* Anna Hamilton, *Beware: Toxic Mold*, Time, Jul. 2, 2001; *Trouble*, People, Jul. 9, 2001, at 109.

serting estoppel." [25] Because I find the policy language unambiguous, there need be no consideration of estoppel.

Plaintiffs' recovery is limited to the amount set forth in the Mold or Fungus provision.

### Conclusion

Plaintiffs' Motion for Partial Summary Judgment with Respect to "Dwelling" Coverage is DENIED. Defendant's Motion for Partial Summary Judgment with Respect to "Dwelling" Coverage is GRANT-ED.

**IT IS SO ORDERED.**

25. *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 63 (Del.Super.1995) (internal citations omitted).