IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JENNIFER L. SMITH, | § | |
| | § | No. 642, 2015 |
| Defendant Below, | § | |
| Appellant/Cross-Appellee, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| DELAINE MAHONEY, NICOLE | § | C.A. No. N12C-10-046 |
| MARIE RICHARDS, | § | |
| | § | |
| Plaintiffs Below, | § | |
| Appellees/Cross-Appellants. | § | |

Submitted:  September 21, 2016
Decided:  November 3, 2016

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

Upon Appeal from the Superior Court: **AFFIRMED**.

Robert C. Collins, II, Esquire, Schwartz & Schwartz, P.A., Dover, Delaware; Robert S. Peck, Esquire (*argued*), Center for Constitutional Litigation, P.C., Fairfax Station, Virginia,  and Jeffrey R. White, Esquire, Center for Constitutional Litigation, P.C., Washington, DC, for Appellant/Cross-Appellee, Jennifer L. Smith.

Thomas P. Leff, Esquire (*argued*), Rachel D. Allen, Esquire, and Brian V. Demott, Esquire, Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware, for Appellee/Cross-Appellant, Delaine Mahoney.

Raeann Warner, Esquire, Jacobs & Crumplar, P.A., Wilmington, Delaware; Patrick C. Gallagher, Esquire, Curley, Dodge, & Funk, LLC, Dover, Delaware, *Amicus Curiae* for Delaware Trial Lawyers Association in Support of Appellant/Cross-Appellee, Jennifer L. Smith.

**SEITZ**, Justice:

## I. Introduction

The collateral source rule excludes from a jury's consideration payments or compensation received by a tort plaintiff from a source independent of the wrongdoer. Even though the rule might result in the wrongdoer paying for expenses already paid to the plaintiff by a third party, the law has historically allowed the plaintiff a double recovery, reasoning that imposing maximum liability has a deterrent effect, and the wrongdoer should not benefit from the plaintiff's good fortune of having another source of compensation.

When a plaintiff claims medical expenses as damages in a personal injury suit, we have applied the collateral source rule to gratuitous write-offs by physicians and to payments by private health insurers. In those situations, our prior decisions have allowed the plaintiff to present to the jury the standard cost of the healthcare services instead of the amount actually paid the provider. By operation of the rule in those circumstances, the plaintiff is able to recover amounts that are paid by no one.

In *Stayton v. Delaware Health Corporation*[1] we drew the line at gratuitous services and private health insurance, and refused to extend the collateral source rule when Medicare paid the plaintiff's past medical expenses. We held that the collateral source rule could not be used to increase an injured party's recovery of

___
[1] 117 A.3d 521 (Del. 2015).

1

past medical expenses beyond those actually paid by Medicare. Although we did not overrule our earlier precedent, we questioned whether charges paid by no one and that are unnecessary to make the plaintiff whole should be awarded as damages. We also believed that the discounting required by Medicare arises from the financial agreement between the healthcare provider and the government, not with the plaintiff. Thus, it is the taxpayers who directly benefit from Medicare's reduced reimbursement rates. After balancing the competing concerns, we thought the better course was to limit a plaintiff's past medical expense damages to the actual amount paid by Medicare. Further, to eliminate inefficient litigation over the reasonable value of medical services, we also decided that the amount paid by Medicare conclusively determines the reasonable value of the injured party's past medical services.

This appeal requires us to consider whether the collateral source rule should apply when Medicaid pays for an injured party's medical expenses. For essentially the same reasons expressed in *Stayton*, we hold that, when Medicaid has paid an injured party's medical expenses, the collateral source rule cannot be used to increase an injured party's recovery of past medical expenses beyond those actually paid by Medicaid. As with Medicare, the difference is unnecessary to make the injured party whole because it is paid by no one. Like Medicare, the reduced charges required by Medicaid directly benefit federal and state taxpayers,

2

not the plaintiff. Thus, we again refuse to extend operation of the collateral source rule. Further, we conclude as we did for Medicare that the amount paid by Medicaid is conclusive of the reasonable value of the injured party's past medical services. We therefore affirm the Superior Court's decision applying *Stayton* when Medicare pays a plaintiff's past medical expenses.

We also affirm the Superior Court's ruling that future medical expenses are not subject to Medicaid reimbursement limitations. Unlike Medicare, Medicaid coverage is income dependent, and might not be available if a plaintiff improves her financial position to a living wage and secures other insurance. Because of the uncertainty of future coverage, Medicaid benefits cannot be used to limit a plaintiff's future medical expenses.

## II.    Statement of Facts and Procedural History

The appellant, Jennifer L. Smith, was injured in two car collisions. Although employed when her injuries occurred, Smith qualified for Medicaid coverage. At first, her treating physician sought to recover his standard charges of $22,911 from the proceeds of any personal injury settlement. But later, the treating physician opted to forego his original billed amount, and instead billed Medicaid for his charges. Medicaid paid the treating physician $5,197.71, and asserted a lien in that amount on the proceeds of any recovery by settlement or lawsuit.

3

Smith filed suit in the Superior Court against the two defendants. At trial, Smith presented to the jury the treating physician's standard charge of $22,911 and a $2,000 charge from MRI Consultants. Smith's medical expert also testified that Smith would require future medical treatment of about $3,300 per year. The jury did not hear that the medical providers were never paid the difference between what Medicaid paid ($5,197.71), and the amount originally billed by the medical providers ($24,911), or $19,713.29. A Superior Court jury returned a verdict for Smith and awarded her $24,911 for past medical expenses, $10,000 for future medical expenses, and $15,000 for pain and suffering.

Because there were two car crashes and two defendants, the jury apportioned its award ninety percent to defendant Delaine Mahoney and ten percent to defendant Nicole Marie Richards. The court also reduced Richard's share under the Delaware PIP statute by $2,244.35 because that amount could still be used to cover Richard's liability. When all was netted out, the Superior Court entered judgment against the defendants jointly and severally for $49,911.

Following post-trial motions, the Superior Court issued a November 20, 2015 opinion where it considered the impact of the intervening *Stayton* decision on the jury award. Relying on *Stayton* and the Superior Court's earlier decision in

4

*Rice v. The Chimes, Inc.*,[2] the court determined that "Delaware case law is clear that the collateral source rule does not apply to Medicaid or Medicare write-offs."[3] According to the court, the written-off amount was not paid by any collateral source, and, as in *Stayton*, the write-offs are not "payments made to or benefits conferred on the injured party."[4] Thus, the collateral source rule would not be applied to allow Smith to recover the amount written off for past medical services. The court reduced Smith's past medical expenses to $5,197.71—the amount Medicaid actually paid to the medical providers.

As for future medical expenses, the Superior Court recognized that in *Stayton* we applied traditional notions of causation, and reaffirmed the established principle that future damages must be proven with reasonable certainty. The Superior Court reviewed its recent decision in *Russum v. IPM Development Partnership LLC*,[5] but thought it was distinguishable. In *Russum*, the court applied *Stayton* and held that, when Medicare pays medical expenses, future medical expenses must be limited to amounts projected to be paid by Medicare. The court distinguished *Russum* due to the differences between Medicare and Medicaid coverage. As the court held, Medicare enrollment is mandatory and based on age, disability, and work history. But Medicaid enrollment is optional and based on

---

[2] C.A. No. 01-03-260 CLS (Del. Super. Mar. 10, 2005).
[3] *Smith v. Mahoney*, 2015 WL 10519628, at *3 (Del. Super. Nov. 20, 2015).
[4] *Id*. (quoting *Stayton*, 117 A.3d at 527).
[5] 2015 WL 4594166 (Del. Super. July 7, 2015).

income resources and other factors. Medicaid coverage can also end based on the plaintiff's improving finances and availability of other insurance. Because future Medicaid eligibility is uncertain and thus "purely speculative and conjectural," the Superior Court declined to reduce the jury's $10,000 award for future medical expenses to account for the lower reimbursement rates of future Medicaid coverage.[6]

### III. Analysis

Smith raises several issues on appeal. First, Smith claims that the Superior Court erred when it applied the *Stayton* decision to Medicaid benefits. According to Smith, Medicaid benefits differ from Medicare benefits because healthcare providers supposedly must accept Medicare, but can exercise a choice whether to accept Medicaid. In other words, because the provider has a choice, if a provider chooses to accept Medicaid instead of billing the injured party the standard cost of medical services, the provider has conferred a benefit on the injured party which, under the collateral source rule, should not benefit the tortfeasor. Smith also argues that the collateral source rule must be applied to Medicaid benefits because the jury trial right and due process prohibit the court from limiting damages. Finally, Smith argues that the failure to apply the collateral source rule to Medicaid

---

[6] *Smith*, 2015 WL 10519628, at *4.

6

recipients will unconstitutionally burden access to the courts. Because Smith raises legal issues, we review the Superior court's decision *de novo*.[7]

As we noted in *Stayton*, the collateral source rule strikes a balance between two competing principles: "(1) a plaintiff is entitled to compensation sufficient to make him whole, but no more; and (2) a defendant is liable for all damages that proximately result from the wrong."[8] Where the plaintiff receives a payment from a third party source, "the plaintiff's net loss will be less than the full damages proximately caused by the tortfeasor's wrongdoing."[9] If the payment source is independent of the tortfeasor, the collateral source rule traditionally allocated the double recovery to the plaintiff because "a tortfeasor has no interest in, and therefore no right to benefit from, monies received by the injured person from sources unconnected to the defendant."[10] Between the two—the tortfeasor and the injured party—"the law must sanction one windfall and deny the other" and "favors the victim of the wrong rather than the wrongdoer."[11]

Before *Stayton*, the Court in *Onusko v. Kerr*[12] addressed the collateral source rule and the write off of medical expenses by the medical provider. In *Mitchell v.*

---

[7] *Stayton*, 117 A.3d at 526 (citing *General Motors Corp. v. New Castle County*, 701 A.2d 819, 822 (Del. 1997)).

[8] *Id*. at 526 (quoting *Mitchell v. Haldar*, 883 A.2d 32, 37 (Del. 2006)).

[9] *Stayton*, 117 A.3d at 527.

[10] *Id*. (quoting *Mitchell*, 883 A.2d at 37-38).

[11] *Stayton*, 117 A.3d at 527.

[12] 880 A.2d 1022 (Del. 2005).

*Haldar*[13] we addressed reduced charges required by private insurance contracts.  In those situations, we decided that the tortfeasor should not benefit from a physician's gratuitous write-off in exchange for payment in cash, or a private insurer's contractually-required reduced charges, because both adjustments are "compensation or indemnity received by the tort victim from a source collateral to the tortfeasor."[14]   The result of these decisions was to allow personal injury plaintiffs to present to the jury the standard cost of the medical provider's services, rather than the amount actually paid, even though the difference between the two is paid by no one.

In *Stayton*, we declined to extend our prior rulings in *Onusko* and *Mitchell* to medical provider charges in excess of Medicare coverage.  Rather than revisit *Onusko* and *Mitchell*, we drew a line and decided not to extend their holdings to cases where Medicare pays a plaintiff's medical expenses.  We reasoned that few healthcare consumers actually pay the original amounts billed for those services.  The few who pay standard rates are likely uninsured, but declining in numbers because of the insurance mandate of the Patient Protection and Affordable Care Act.[15]   We also viewed the discounts required by government providers not as gratuities or benefits bargained for by patients.  Instead, the provider and the

---

[13] 883 A.2d 32 (Del. 2006).

[14] *Stayton*, 117 A.3d at 531 (quoting *Mitchell*, 883 A.2d at 40) (quoting *Acuar v. Letourneau*, 531 S.E.2d 316, 320 (Va. 2000)).

[15] *See* 42 U.S.C. § 18001 *et seq*.

government agreed to a fee schedule independent of the patient, where the provider secures volume and assured payment in exchange for billing at a fee schedule less than the provider's standard rates. As we observed, the difference between the standard rate and the Medicare reimbursement "was paid by no one" and "[a]ny benefit that Stayton's healthcare providers conferred in writing off over ninety percent of their collective charges was conferred on the federal taxpayers."[16] Thus, the reasons for applying the collateral source rule did not support its application where Medicare paid for services, causing us to refuse to extend the rule beyond gratuitous write-offs and private health insurance.

Our *Stayton* decision logically applies to Medicaid payments. Medicaid is a health insurance program for low-income individuals funded by federal and state governments.[17] Once a medical provider looks to Medicaid for payment, the provider must accept the payment according to a fee schedule as a final payment and cannot "balance bill" the patient for the difference between the amount reimbursed by Medicare or Medicaid, and its standard charges.[18] Both programs allow subrogation rights where third party liability is established, meaning that Medicare and Medicaid can both seek reimbursement for medical expenses paid by the programs from money received by the injured party from lawsuits and

---

[16] *Stayton*, 117 A.3d at 531.
[17] Social Security Act Volume I, Title 19, codified at 42 U.S.C. §§ 1396 *et seq*.
[18] 42 U.S.C. § 1395cc(a)(1)(A) [Medicare]; and 42 U.S.C. § 1396(a)(25)(c) [Medicaid].

9

settlements.[19]  Subrogation tempers the plaintiff's ability to double recover for medical expenses at least to the extent of payments made by Medicare and Medicaid.

Like Medicare, the difference between the Medicaid fee schedule and the medical provider's standard rates, which cannot be charged the plaintiff once payment is requested from those programs, is not a gratuity bestowed on the injured party or a benefit bargained for by the plaintiff.  Instead, the savings realized by payments according to the government fee schedule, which is less than the provider's standard rates, benefit federal and state taxpayers.  And like Medicare, the difference between payments under the Medicaid fee schedule and standard rates is paid by no one, and is not required to make the injured party whole.[20]

In an attempt to get out from under *Stayton*, and its application to Medicaid, Smith argues that Medicaid is different from Medicare.  According to Smith, we held in *Stayton* that medical providers must accept Medicare when treating a patient who qualifies for Medicare.  In contrast, Smith claims that under Medicaid, medical providers can choose whether to seek the standard charges from the

---

[19] 42 U.S.C. § 1396a(a)(25)(A) [Medicaid]; 42 U.S.C. §1395y(b)(2) [Medicare].

[20] *Haygood v. De Escabedo*, 356 S.W.3d 390, 395 (Tex. 2012) ("An adjustment in the amount of those [medical] charges to arrive at the amount owed is a benefit to the insurer, one it obtains from the provider for itself, not for the insured" and "[a]ny effect of an adjustment on such liability is at most indirect and is not measured by the amount of the adjustment.").

proceeds of any lawsuit, or accept the reduced payments made by Medicaid. Thus, the provider's choice to accept Medicaid is a benefit conferred on the patient, and should be subject to the collateral source rule. Smith also argues that she bargained with the treating physician to accept Medicaid, causing the treating physician to forego his letter of protection agreement, which would have required payment at his standard rates.

Smith's first point—that Medicare is involuntary and Medicaid is voluntary—misinterprets our decision in *Stayton*. Medical providers have a choice under either program whether to bill the program for benefits.[21] If the medical provider chooses up front to seek payment of its standard charges from litigation or settlement, and requires a "letter of protection," it can attempt to recover standard rates, with the uncertainty and delay that accompanies this choice. But once a provider seeks payment from either government program, with limited exceptions, the patient can no longer be billed the provider's standard charges and must bill the government according to the fee schedule set by the government.[22] In that instance, the difference between standard rates and the government fee schedule is

---

[21] Nicole Huberfield, et al., *Plunging Into Endless Difficulties: Medicaid and Coercion in National Federation of Independent Business v. Sebelius*, 93 B.U. L. REV. 1, 20 (2013) ("Healthcare providers are not required to participate in the Medicaid program…); *Garelick v. Sullivan*, 784 F. Supp. 108, 109 (S.D.N.Y. 1992), *aff'd*, 987 F.2d 913 (2d Cir. 1993) ("Physicians may routinely accept assignment of claims for treatment of Part B Medicare patients, or may accept assignment of Medicare claims on a selective basis, or may refuse to accept assignment of any Medicare claims.").

[22] 42 U.S.C. § 1395cc(a)(1)(A) [Medicare]; and 42 U.S.C. § 1396a(25)(c) [Medicaid].

paid by no one, and is not needed to make the plaintiff whole. The discounted

services primarily benefit taxpayers instead of the plaintiff.

Smith argues that the provider's decision to bill Medicaid is a benefit

conferred on the plaintiff. Instead of charging standard rates, the argument goes,

the provider benefits the patient when he chooses to accept Medicare or Medicaid,

"forgiving" its claim to standard rates. But, like Medicare, the choice is better

characterized as a business decision made with the provider's economic interest in

mind rather than a benefit intended for the patient.[23] The provider weighs whether

to claim its standard charges as part of a settlement or litigation, and the risks and

delay that are part of that choice, against the certainty and timelier reimbursement

from the government of a lesser amount than standard charges. The patient is not

part of this economic calculus.

We have already drawn the line in *Stayton*, where we refused to extend our

decisions in *Onusko* and *Mitchell* to Medicare payments. We see no reason to treat

Medicaid differently. Although the government programs for the most part serve

different populations, the logic that led us to refuse to extend our prior collateral

source decisions to Medicare applies with equal force to Medicaid.

---

[23] *Stayton*, 117 A.2d at 531 (quoting *Haygood v. De Escabedo*, 356 S.W.2d 390, 395 (Tex. 2011)); *see Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Trust Dated June 27, 2002*, 410 F.3d 304, 316 (6th Cir. 2005) (medical providers choose to accept Medicaid to avoid no recovery from the lawsuit and payment delays).

Smith also raises a number of constitutional challenges. First, she claims that refusing to apply the collateral source rule when Medicaid is involved deprives her of the constitutional right to have the jury determine damages, and violates due process. Smith has not cited any authority where a court has sustained a constitutional challenge to a court's refusal to apply the common law collateral source rule.[24] Neither the United States nor the State Constitutions guarantee a tort plaintiff a double recovery or recovery of money paid by no one.

Smith also argues that not applying the collateral source rule where Medicaid pays medical provider charges unconstitutionally burdens access to the courts. But a plaintiff's ability to access the courts to seek redress for personal injuries is not being restricted, which is required to raise a constitutional issue.[25] A

---

[24] The authorities Smith does cite are inapposite. *See Lecates v. Justice of Peace Court No. 4*, 637 F.2d 898 (3d Cir. 1980) (surety bond requirement denied indigent plaintiff meaningful access to the court); *Boddie v. Connecticut*, 401 U.S. 371, 374 (1971) (forcing indigent plaintiff to pay a filing fee for divorce violated due process). In *Lecates* and *Boddie*, the government infringed on plaintiffs' access to the courts because they could not afford to pay court fees. Declining to extend the collateral source rule to Medicaid and Medicare write-offs simply caps the amount of damages Smith can recover to the amount the government actually paid for the services.

[25] Although citizens have a right to "meaningful access to the courts," (*Johnson v. State*, 442 A.2d 1362, 1364 (Del. 1982)), courts have typically considered court access claims when financial requirements or government misconduct impedes a plaintiff's ability to bring a claim. *See Boddie*, 401 U.S. at 374 (holding that indigent plaintiffs were unconstitutionally denied access to divorce courts by imposition of filing fees they were unable to pay); *A.J. ex rel. Dixon v. Tanksley*, 94 F. Supp. 3d 1061, 1073 (E.D. Mo. 2015), *aff'd,* 822 F.3d 437 (8th Cir. 2016) ("To establish a claim that a government official violated the plaintiffs' constitutional right to access the courts, plaintiffs must show that the [State] acted with some intentional motivation to restrict their access to the courts."); *Aron v. Becker*, 2014 WL 5816996, at *3 (N.D.N.Y. Nov. 10, 2014) (holding that fee shifting statute did not infringe on the plaintiff's right to access the

13

Medicaid beneficiary is free to file suit for personal injuries, without restriction, whether the collateral source rule applies or not.

Turning to the collateral source rule and future medical expenses, the Superior Court decided that "Medicaid eligibility is purely speculative and conjectural" and thus should not reduce a plaintiff's future medical expenses.[26] We agree with the reasoning of the Superior Court that Medicaid is a voluntary program where beneficiaries can and are encouraged to move out of the program when their financial circumstances improve. Because it is uncertain whether Smith would remain covered by Medicaid in the future, the Superior Court correctly decided that the jury's award of expected future medical expenses should not be reduced by amounts that might be covered under Medicaid.[27]

## IV. Conclusion

Through our decision in *Stayton* and our decision today, we hold that the collateral source rule does not apply to Medicare and Medicaid benefits. Thus, for past medical expenses, a tort plaintiff cannot recover the difference between a medical provider's standard charges and what Medicare and Medicaid actually paid. The amount paid by Medicare and Medicaid is also conclusive of the

---

courts because it is only triggered when a plaintiff brings "frivolous, unreasonable, and/or baseless claims.").

[26] *Smith*, 2015 WL 10519628, at *4.

[27] The parties have not briefed or argued whether the Patient Protection and Affordable Care Act affects our decision today.

14

reasonable value of the past medical expenses. For future medical expenses, we hold that, given the uncertainty of Medicaid coverage, the amount that Medicaid might pay does not limit the recovery of future medical expenses.

It may be that ending the practice under the collateral source rule of awarding tort plaintiffs money they would never have received will make smaller suits less economical for attorneys. There are public policy issues to be debated, including whether attorneys need added incentive to continue to pursue such cases. Many states have adopted statutes addressing the collateral source rule.[28] The General Assembly has modified the rule in medical malpractice cases.[29] It can decide whether the dramatic changes in healthcare coverage, and its intersection with tort law, require further legislation to address the collateral source rule.

The judgment of the Superior Court is affirmed.

---

[28] *See* Rebecca Levenson, *Allocating the Costs of Harm to Whom They Are Due: Modifying the Collateral Source Rule After Health Care Reform*, 160 U. PA. L. REV. 921, 926, n. 21-22 (2012) (citing statutes).

[29] 18 *Del. C.* § 6862.