# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SPINE CARE DELAWARE, LLC,      )
                               )      C.A. No. K18C-07-008 NEP
            Plaintiff,         )      In and for Kent County
                               )
      v.                       )
                               )
                               )
                               )
STATE FARM MUTUAL              )
AUTOMOBILE INSURANCE           )
COMPANY and STATE FARM         )
FIRE AND CASUALTY COMPANY,     )
                               )
            Defendants.        )

Submitted: August 26, 2019
Decided: October 29, 2019

## OPINION AND ORDER

***Upon Plaintiff's Motion for Summary Judgment***
**GRANTED**

***Upon Defendants' Motion for Summary Judgment***
**DENIED**

John S. Spadaro, Esquire, John Sheehan Spadaro, LLC, Smyrna, Delaware, *Attorney for Plaintiff.*

Colin M. Shalk, Esquire, Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware, *Attorney for Defendants.*

Kyle G.A. Wallace, Esquire, *(pro hac vice)* and Gavin Reinke, Esquire, *(pro hac vice),* Alton & Bird LLP, Atlanta, Georgia, *Of Counsel for Defendants.*

**Primos, J.**

Spine Care Delaware, LLC (hereinafter "Spine Care"), has filed a complaint for declaratory relief against State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (hereinafter collectively "State Farm"), seeking a judicial declaration as follows:

> a. When the defendants pay [Spine Care] for covered, [Personal Injury Protection]-related medical expenses, they must pay any reasonable amount charged, consistent with 21 *Del. C.* § 2118(a)(2).
> b. The defendants' practice of capping such payments at the Medicare reimbursement rate is inconsistent with section 2118(a)(2); results in unreasonably reduced payments; and is therefore unlawful.[1]

Currently before the Court is Spine Care's motion for summary judgment. The Court has determined that Spine Care is entitled to summary judgment *on the relief sought in its complaint.*[2]

## I.    Stipulated Facts

Spine Care is an ambulatory surgical center (hereinafter "ASC") that operates a facility in which independent physicians perform minimally invasive spinal injections on patients who have suffered injury in automobile accidents. Some of these patients are insureds through Delaware Personal Injury Protection (hereinafter "PIP") coverage. State Farm is an insurance provider that provides PIP coverage to Delawareans.

Spine Care's patients may choose from a variety of treatment procedures, including bilateral[3] and multilevel[4] spinal injections. During a bilateral or multilevel spinal injection, some tasks are performed only once, despite the fact that the procedure covers two sides of the spine or multiple spinal levels. These non-repeated tasks include the

---

[1]  Spine Care Compl. at ¶ 2.
[2]  As the Court explains below, Spine Care's motion seeks relief that differs from that requested in its complaint. Because Spine Care is entitled to the relief requested in its complaint (although not in its motion), the Court is granting summary judgment in Spine Care's favor.
[3]  Spinal injections performed on both sides of the spine.
[4]  Spinal injections performed on multiple vertebral levels.

preoperative assessment process, intravenous access on the patient, administration of intravenous antibiotics, and administration of preoperative medications.[5]

Spine Care charges a facility fee for each medical procedure that is comparable to those of its two New Castle County competitors. Specifically, Spine Care's fees are less than those of one competitor, but more than those of the other competitor. Spine Care bills in full for each injection even when multiple injections are performed in the same procedure. In other words, Spine Care does not provide a discount on subsequent injections.

To generate a bill, Spine Care utilizes Current Procedural Terminology (hereinafter "CPT") codes. The CPT codes are billing codes, copyrighted by the American Medical Association, to classify medical procedures. Each CPT code corresponds to a specific medical procedure. After a physician at Spine Care performs a spinal injection procedure, he or she uses the CPT codes to indicate which injections were performed. The CPT codes are written on a billing sheet, which is sent to Spine Care's billing department. The billing department reviews the CPT codes on the billing sheet and generates a bill based on Spine Care's prices for each type of injection, which it then submits to the patient's insurer.[6]

When State Farm receives a bill from Spine Care, it sometimes applies multiple payment reductions (hereinafter "MPRs") to the bills for bilateral and multilevel spinal injections and thereby fails to pay the bills in full.[7] State Farm applies the Medicare Claim Processing Guidelines as the basis for its MPRs, and justifies its decision by arguing that it is common practice in the industry for insurers to apply MPRs.

Under the Medicare Claim Processing Guidelines, an ASC that performed a multilevel procedure is paid one hundred percent of the highest paying procedure and

---

[5] Pl.'s Resp. to Def.'s Second Set of Interrog. at 5-7; Dep. Bonnie O'Connor at 59, 60-61, 63.

[6] *See* Dep. Bonnie O'Connor at 28.

[7] At other times, State Farm pays the full amounts billed by Spine Care without applying MPRs. Whether this is inadvertent or deliberate on State Farm's part is not pertinent to the Court's decision.

3

fifty percent of the payment rate for other procedures.[8] For a bilateral procedure, the ASC is paid one hundred percent for one procedure, and fifty percent for the other procedure.[9]

Many insurers apply MPRs to bills they receive from healthcare providers for bilateral or multilevel spinal injections.[10] Some, like State Farm, use the Medicare Claim Processing Guidelines as their basis for MPRs, while others use a different method to determine the appropriate level of MPRs.[11] For example, for bilateral injections, some insurers reimburse at less than fifty percent for the second injection.[12] For multilevel injections, some insurers pay twenty-five percent for each injection after two.[13]

## II.    Questions Properly Before this Court

Spine Care's motion seeks summary judgment "to this effect: that [Spine Care's] fees for bilateral and multilevel spinal injections are reasonable." This is not, however, the relief that Spine Care seeks in its complaint: there, Spine Care requests a declaration that (1) State Farm must pay any reasonable amount charged by Spine Care for PIP-related medical expenses, and (2) State Farm's practice of capping its payments at the Medicare reimbursement rate (in other words, using the MPRs imposed by the Medicare Guidelines) is unlawful.

It is evident that Spine Care, like State Farm, seeks summary judgment on all claims in this litigation rather than partial summary judgment.[14] It is also evident, viewing the record before the Court, that Spine Care is entitled to summary judgment *on the relief sought in its complaint.* Therefore, denying Spine Care summary judgment because the relief requested in its motion differs from that in its complaint would be exalting form

---

[8] Medicare Claims Processing Manual, Chapter 14, Section 40.5.

[9] *Id.*

[10] State Farm Mem. in Supp. of Mot. Summ. J., Ex. 8, Expert Report from Nicole Bonaparte, at 5-7.

[11] *Id.*

[12] *Id.* at 5.

[13] *Id.* at 6.

[14] At oral argument, Spine Care's counsel conceded that the Court's decision on the cross motions would resolve the case.

4

over substance. The matter is ripe for decision, and the Court will resolve it for the reasons that follow.[15]

## III. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[16] When the parties have filed cross motions for summary judgment and have not argued that there is any issue of material fact, this Court "shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[17] In such a procedural setting, the parties are conceding the absence of any material factual issues and, at the same time, are acknowledging that the factual record before this Court is sufficient to support their respective motions.[18]

Here, the parties filed cross motions for summary judgment after completion of discovery. At oral argument, both parties agreed there is no genuine issue of material fact and that this matter is ripe for decision on the merits based upon the record before this Court. Therefore, this matter will be decided on the record at bar.

## IV. Discussion

Pursuant to 21 *Del. C.* § 2118(a), every motor vehicle owner, other than a self-insurer pursuant to 21 *Del. C.* § 2904, must obtain insurance providing "[c]ompensation to injured persons for *reasonable and necessary* expenses incurred within 2 years from

---

[15] Notably, even had Spine Care successfully amended its complaint to conform to the relief sought in its motion, the record would *not* support a determination that Spine Care's fees for bilateral and multilevel procedures are reasonable as a matter of law. As explained *infra*, a number of factors guide a court's determination of whether particular fees are reasonable. The evidence presented by Spine Care substantively addresses only one of those factors, namely, the ordinary and reasonable charges of similarly situated professionals. Therefore, the evidence in the record would have been insufficient for the Court to make such a determination even had Spine Care sought such a declaration in its complaint.

[16] Del. Super. Ct. Civ. R. 56(c).

[17] Del. Super. Ct. Civ. R. 56(h).

[18] *Browning-Ferris, Inc. v. Rockford Enters. Inc.*, 642 A.2d 820, 823 (Del. Super. 1993).

5

the date of the accident."[19] The statute ensures compensation for medical expenses, lost earnings, and other expenditures.

This Court addressed the concept of reasonableness of fees for medical services, although not in the PIP context, in *Anticaglia v. Lynch*.[20] In that case, a doctor sued one of his patients to receive compensation for medical services.[21] The doctor argued that his fees were "reasonable and customary," and therefore that his patient must pay the bill in full.[22] According to the court in *Anticaglia*, the following factors guide a court's or jury's determination of the reasonableness of medical fees:

> the ordinary and reasonable charges usually made by members of the same profession of similar standing for services such as those rendered here, the nature and difficulty of the case, the time devoted to it, the amount of services rendered, the number of visits, the inconvenience and expense to which the physician was subjected, and the size of the city or town where the services were rendered. The Court also should consider the physician's education and training, experience, skill or capacity, professional standing or reputation, and the extent of the physician's business or practice. Finally, the Court should consider the ability of the defendant to pay.[23]

In *Watson v. Metropolitan Property and Casualty Insurance Company*, the plaintiff sought reimbursement for medical expenses under the PIP statute.[24] In response, the defendant, a PIP insurer, argued that the plaintiff had failed to establish that the incurred medical expenses were reasonable.[25] To resolve the matter, the court applied the *Anticaglia* factors in the PIP setting.[26] The court also noted, as had the court in *Anticaglia*,

---

[19] 21 *Del. C.* § 2118 (emphasis added).
[20] 1992 WL 138983 (Del. Super. March 16, 1992).
[21] *Id.* at *1.
[22] *Id.* at *5.
[23] *Id.* at *6 (internal citations omitted).
[24] 2003 WL 22290906, at *1 (Del. Super. Oct. 2, 2003).
[25] *Id.* at *3, *5.
[26] *Id.* at *5-6.

6

that the determination of whether particular medical expenses are reasonable and necessary is "entirely factual in nature."[27]

Delaware provides a system in which the medical provider renders the initial bill for services provided, and the insurer then has the right to investigate the reasonableness of the charges.[28] However, any adjustment to the bill by the insurer must have a basis in fact that conforms to the *Anticaglia* and *Watson* factors.

State Farm has failed to present evidence demonstrating that its MPRs correlate with reasonable charges for bilateral and multilevel injections. Spine Care has conceded that there is some reduction in time and effort associated with bilateral and multilevel injections,[29] thereby implicating some of the *Anticaglia* and *Watson* factors, notably time devoted to the medical services and the number of visits. However, State Farm has failed to retain an expert to explain how a fifty percent reduction for one of the injections in a bilateral procedure, or a fifty percent reduction for all but one of the injections in a multilevel procedure, correlates directly to reduced costs for Spine Care and reduced efforts for medical providers in Spine Care's facility, or how the MPR-modified bills conform to the specific factors listed in *Anticaglia* and *Watson*. In other words, State Farm's MPR calculations fail to show that they are logically or consistently related to what reasonable fees should be, pursuant to the *Anticaglia* and *Watson* factors, for the procedures performed by Spine Care.

State Farm justifies its application of MPRs by arguing that MPRs are commonly used in the insurance industry. It further argues that its reductions are not arbitrary, because they are applied according to the well-established Medicare Claim Processing Guidelines. However, State Farm's argument is unpersuasive because there is no demonstrated correlation between the Medicare Guidelines and the reasonableness of

---

[27] *Id.* at *5.

[28] *See Murphy v. United Servs. Auto Ass'n.*, 2005 WL 1249374, at *2 (Del. Super. May 10, 2005) ("Delaware has consistently permitted insurers to investigate the reasonableness of expenses.").

[29] Pl.'s Resp. to Def.'s Second Set of Interrog. at 5-7.

7

medical fees under Delaware law.[30] Indeed, the arbitrariness of Medicare-prescribed MPRs is demonstrated by the fact that some private insurers impose an even greater reduction for subsequent procedures when paying for bilateral and multilevel spinal injections.[31] Moreover, a medical provider that elects to accept Medicare payments has a legal obligation to accept Medicare's reduced payments.[32]

State Farm also argues that its payments, post MPR, are reasonable because they are "substantially more"[33] than payments from private insurers like Aetna and Blue Cross Blue Shield. However, the fact that Aetna and Blue Cross reduce billed amounts pursuant to contract, and then apply MPRs to those reduced rates, does not establish that it is appropriate for State Farm to employ MPRs in the PIP context, because these private health insurers have contractual relationships with Spine Care that require acceptance of reduced payments. The fact that State Farm, even with MPRs, is paying more than Medicare or a private health insurer is irrelevant when reduced payments from those payors are determined by federal law or private insurance contracts.[34]

State Farm posits that the question before this Court is "the reasonableness of State Farm's application of MPRs."[35] To the contrary, the question before the Court is whether State Farm's application of Medicare-prescribed MPRs represents an appropriate method to arrive at a reasonable fee for the subject services. Whether MPRs are commonly employed in the insurance field, or whether they result in payments that are higher than

---

[30] *Cf. Stayton v. Delaware Health Corp.*, 117 A.3d 521, 524 (Del. 2015) ("Medicare pays, on average, less than one-third of a patient's medical expenses.").

[31] Bonaparte Expert Report, at 5, 6.

[32] *See Smith v. Mahoney*, 150 A.3d 1200, 1206-07 (Del. 2016) (TABLE) (explaining that when medical provider seeks payment from Medicare, government must be billed according to government's fee schedule).

[33] State Farm Mem. in Supp. of Mot. Summ. J. at 18.

[34] *See Gen. Motors Corp. v. English*, 1991 WL 89812, at *2 (Del. Super. May 10, 1991) (holding that because plaintiff did not have contractual relationship with medical provider, it therefore was "not entitled" to receive benefits of contract to which it was "not a party").

[35] State Farm's Resp. to Spine Care's Mot. for Summ. J. at 2. *See also* Bonaparte Expert Report at 4 ("I have been asked to assess whether State Farm's application of the Medicare Claim Processing Guidelines to payment for bilateral spinal injections and spinal injections performed at multiple vertebral levels in the same operative session is reasonable.").

those received by Spine Care for the same services from Medicare or from commercial insurance carriers with whom Spine Care has contractual relationships, are questions irrelevant to the Court's inquiry in this matter. In this case, State Farm has made no showing that its application of MPRs results in a fee that conforms to the *Anticaglia* and *Watson* standards—and conversely, that fees unreduced by those MPRs are *per se* unreasonable. More to the point, State Farm has failed to demonstrate that the specific MPRs in question reflect a logical and consistent application of the *Anticaglia* and *Watson* factors to the amounts billed by Spine Care—and the Court must therefore grant summary judgment to Spine Care on this issue.

## V. Conclusion

Every motor vehicle owner, other than a self-insurer pursuant to 21 *Del. C.* § 2904, must obtain insurance providing "[c]ompensation to injured persons for *reasonable and necessary* expenses."[36] To determine whether a medical provider's services are "reasonable and necessary," this Court looks to the factors listed in *Anticaglia* and subsequently applied in the PIP context by *Watson*.

Here, State Farm has failed to present evidence demonstrating that its MPR-reduced payments correspond to reasonable charges for bilateral and multilevel injections. Moreover, this Court rejects State Farm's arguments comparing its payments for services to those by Aetna, Blue Cross, and Medicare, because Spine Care either has a contract to accept their reduced payments or is required to do so under federal law.

**WHEREFORE,** for the foregoing reasons, Spine Care's Motion for Summary Judgment is **GRANTED,** and State Farm's Motion for Summary Judgment is **DENIED.** Accordingly, the Court issues a judicial declaration that:

(1) State Farm must pay Spine Care for any reasonable amount charged by Spine Care for covered, PIP-related medical expenses; and

---

[36] 21 *Del. C.* § 2118 (emphasis added).

9

(2)    State Farm's practice of applying Medicare-prescribed MPRs to reduce Spine Care's bills for bilateral and multilevel procedures violates 21 *Del. C.* § 2118(a)(2).

**IT IS SO ORDERED.**

/s/ Noel Eason Primos
Judge

NEP/wjs
*Via File & ServeXpress*
oc:    Prothonotary
       Counsel of Record