# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

EROSION CONTROL SPECIALISTS, INC., )
)
)     C.A. No. N19L-06-082 MAA
Plaintiff,     )
)
v.     )
)
HYETTS CORNER, LLC,     )
)
Defendant.     )

Submitted:  February 6, 2020
Decided:  March 6, 2020

*Upon Defendant Hyetts Corner, LLC's Motion to Dismiss Mechanic's Lien and Building Construction Payments Act Claims: Granted*

## MEMORANDUM OPINION

G. Kevin Fasic, Esquire, of OFFIT KURMAN, P.A., Wilmington, Delaware, Attorney for Plaintiff.

Richard L. Abbott, Esquire, of ABBOTT LAW FIRM, LLC, Hockessin, Delaware, Attorney for Defendant.

**Adams, J.**

1

This action involves the applicability of Delaware mechanic's lien statute, 25 *Del. C.* § 2701 *et seq.* and the Building Construction Payments Act, 6 *Del. C.* § 3501 *et seq.* (the "BCPA"). At the crux of this case is whether a mechanic's lien should attach to seven open lots (the "Lots"), situated in the residential subdivision known as "Enclave at Hyetts Crossing" in Middletown, Delaware, based on work performed by Plaintiff Erosion Control Specialists ("ECS") on open spaces within that development.

Put simply, ECS argues that because it performed work on the open spaces, which benefitted the community generally, a mechanic's lien should attach to the Lots. ECS also argues it is entitled to compensation under the BCPA. Defendant Hyetts Corner LLC ("Hyetts") moves to dismiss the Complaint, in part, on the grounds that the mechanic's lien statute and the BCPA do not apply to the facts alleged in the Complaint. For the reasons stated herein, the Court grants Hyetts' Motion to Dismiss Counts I-VII and Count X of the Complaint.[1]

---

[1] While the Court's decision was pending in this case, another Judge on this Court issued a decision with respect to nearly identical issues, involving the same attorneys and same defendant, in *Pearce & Moretto, Inc. v. Hyetts Corner, LLC*, 2020 WL 532748 (Del. Super. Jan. 31, 2020) ("*Pearce & Moretto*"). Counsel for Defendant brought the decision to the Court's attention on February 6, 2020. The result in this Opinion is consistent with the Court's ruling in *Pearce & Moretto*.

**FACTS AND PROCEDURAL BACKGROUND**

The following facts are drawn from the pleadings and the record currently before the Court, viewed in the light most favorable to ECS.[2]  ECS filed its Complaint on June 25, 2019 against Hyetts seeking a mechanic's lien on seven residential building lots situated in the residential subdivision known as "Enclave at Hyetts Crossing" (hereinafter "Enclave").[3]  ECS's Complaint also included claims for breach of contract, *quantum meruit*/unjust enrichment and a breach of the BCPA.

According to the Complaint, ECS was hired to perform landscaping services for two separate housing developments: Windsor Commons at Hyetts Corner, and Windsor South at Hyetts Corner (now known as the Enclave).[4]  During oral argument, ECS described the work it performed as "landscaping,"[5] and admitted that the work was performed on open spaces in the development, and *not* on any of the Lots.

---

[2] *See GMG Capital Investments v. Athenian Venture Partners*, 36 A.3d 776, 779 (Del. 2012) (citing *State Farm Mut. Auto. Ins. Co. v. Patterson*, 7 A.3d 454, 456 (Del. 2010)).

[3] Counts I through VII of the Complaint represent the seven Lots at issue: Lot 40, Lot 42, Lot 46, Lot 47, Lot 48, Lot 49 and Lot 50.  ECS seeks a lien in the amount of $1,196.14 for each lot.  Hyetts tendered payment to discharge the lien against Lot 40.  *See* Def.'s Petition to Discharge Mechanics Lien Against Lot 40.  (Transaction ID 64303726).

[4] The development has 84 lots, 77 of which had either been sold to homeowners or had been transferred to other developers at the time of oral argument.  The remaining Lots at issue are owned by Defendant.

[5] Tr. at 23:4.

Between April 2015 and November 2017, ECS invoiced all work to an entity known as CCM-Koelig II, LLC. ECS was then directed to break out invoicing for certain landscaping work and begin invoicing Hyetts Corner, LLC, but to continue to bill for work impacting both developments through the CCM entity. ECS continued to perform work at both developments but invoiced its work separately to the different entities at the direction of the owner. While ECS has received partial payments from Hyetts for its work at the Enclave, $100,490.14 remains unpaid as of the date of the filing of the Complaint.

On August 9, 2019, Hyetts filed a Motion to Dismiss Counts I through VII and Count X of the Complaint on the grounds that ECS could not state a claim for mechanics' liens or under the BCPA. Briefing on the Motion to Dismiss was complete on October 15, 2019. The Court heard oral argument on November 22, 2019. On February 6, 2020, Hyetts filed its letter to the Court regarding the *Pearce & Moretto* decision.

## ANALYSIS

When considering a motion to dismiss, the Court must read the complaint generously, accept all of the well-pleaded allegations contained therein as true, and draw all reasonable inferences in a light most favorable to the non-moving party.[6]

---

[6] *In re Gen. Motors (Hughes) S'holder Litig.,* 897 A.2d 162, 168 (Del. 2006); *Lagrone v. Am. Mortell Corp.*, 2008 WL 4152677, at *4 (Del. Super. Sept. 4, 2008).

4

"Dismissal is inappropriate unless the 'plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.'"[7] The motion will be denied when the plaintiff is able to prove facts entitling plaintiff to relief.[8] However, "[w]here allegations are merely conclusory ... (i.e., without specific allegations of fact to support them) they may be deemed insufficient to withstand a motion to dismiss."[9]

## I.  ECS fails to state a claim for a mechanic's lien.[10]

The availability of a mechanic's lien is governed by 25 *Del. C.* § 2702(a):

> It shall be lawful for any person having performed or furnished labor or material, or both, to an amount exceeding $25 in or for the erection, alteration or repair of any structure, in pursuance of any contract, express or implied, with the owners of such structure or with the agent of such owner or with any contractor who has contracted for the erection, alteration or repair of the same and for the furnishing of the whole or any part of the materials therefor, including any person who has performed or furnished labor or material, or both, for or at such structure under a contract with or order from any subcontractor to

---

[7] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d at 168 (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)). *See also Cent. Mortgage Co. v. Morgan Stanley Mortgage Capital Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

[8] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978) (citations omitted).

[9] *Lord v. Souder*, 748 A.2d 393, 398 (Del. 2000).

[10] ECS conceded during oral argument that it was proceeding only under Section 2702(a) and that it cannot meet the requirements of Section 2703 (for improvements to the land alone) due to a lack of the proper metes and bounds description in Exhibit "A" of the Complaint. Therefore, Section 2703 does not apply. Tr. at 51:6- 51:20.

obtain a lien upon such structure and upon the ground upon which the same may be situated or erected.

The right to a mechanic's lien is a creation of statute and "being in derogation of the common law, it must be strictly construed...."[11] "Strict compliance with the statute is required as powerful relief is afforded that was unavailable at common law."[12] Section 2702(a) provides that anyone who has provided labor and/or materials for the erection, alteration or repair of any structure may seek a mechanic's lien for non-payment.[13]

This Court has emphasized its limited judicial role with respect to interpreting Section 2702(a):

Both our inclination and conviction of duty, therefore, is not to extend the operation of the act by construction any further than the terms of it clearly require, and to leave it to the legislature to remedy whatever defect or deficiencies may be found to attend it when put into practical operation and effect. We are therefore not to stretch the act beyond the limit fixed by it.[14]

This limitation is appropriate considering the nature of the remedy the mechanic's lien statute provides: "Statutory provisions permitting the summary enforcement of

---

[11] *Wyoming Concrete Indus., Inc. v. Hickory Commons, LLC II,* 2007 WL 53805, at *2 (Del. Super. Jan. 8, 2007) (citing *Dep't of Cmty. Affairs & Econ. Dev. V.M. Davis & Sons, Inc.,* 412 A.2d 939, 942 (Del. 1980)).

[12] *J.O.B. Constr. Co. v. Jennings & Churella Servs., Inc.,* 2001 WL 985106 (Del. Super.) (Del. Super. Aug. 9, 2001).

[13] *Wyoming Concrete Indus.*, 2007 WL 53805, at *2.

[14] *McCartney v. Buck*, 12 A. 717, 719 (1887) (quoting *Capelle v. Baker*, Del. Super., 3 Houst. 344, 356 (1866)).

private charges, such as mechanics' liens, on property without the consent of the owner or judicial sanction cannot be extended in their operation beyond the plain and fair sense of the terms in which they are expressed."[15]

The case law interpreting the mechanic's lien statute makes clear that the statute permits a lien against a building and land for the value of the labor and materials that "actually" become part of the structure.[16] A "structure" is defined under 25 *Del. C.* § 2701(3) as "a building or house." The Supreme Court of Delaware clarified that this definition is narrow:

> Since the term "house, building, or structure" is now simply "structure," we must give it the limited definitional meaning intended by the codifiers as it appears in the mechanic's lien laws, not the broad dictionary meaning.... In normal day to day usage, structure is one of the broadest words in the English language, but here, under the statutory rule of strict construction we must apply it as it appears in the context of [ ] our mechanic['s] lien laws.[17]

Thus, integral to every claim for a mechanic's lien is the identification of the "structure" against which the lien is sought.[18]

---

[15] *Heitz v. Sayers,* 113 A. 901, 902 (Del. Super. 1921) (quoting *Phillips* on Mechanics' Liens, § 18).

[16] *Girdler Corp. v. Delaware Compressed Gas Co.,* 183 A. 480, 482 (1936) (holding that claimant who performed engineering services was not entitled to a lien since the services performed did not "actually" become part of the building).

[17] *Pioneer Nat. Title Ins. Co. v. Exten Assocs., Inc*., 403 A.2d 283, 285 (Del. 1979).

[18] *Kershaw Excavating Co. v. City Sys., Inc*., 581 A.2d 1111, 1113 (Del. 1990).

ECS argues that, under the statute, site work on a parcel can be considered as benefiting individual structures to be constructed, so long as the value of the work is apportioned among the structures. ECS contends, citing *Wilmington Tr. Co. v. Branmar, Inc.*,[19] that because the Lots in question are intended to have houses built upon them, a mechanic's lien can be imposed on the Lots for the services ECS provided.

Although not stated in the Complaint, ECS agrees that the labor at issue was completed on "open spaces" and not on the specific seven Lots in question.[20] ECS provided landscaping services, such as hydroseeding and mowing, and materials, including various plants.[21] According to ECS, the services performed by it on open spaces within the Enclave development benefitted all lots equally.[22]

Hyetts argues that a mechanic's lien is not available to ECS because the work performed on the open spaces lacks a nexus with a structure on any of the seven Lots at issue.[23] Therefore, because there was no work performed on any of the seven Lots and none of the Lots have a structure on them, Section 2702 is not satisfied and ECS's mechanic's lien claim must be dismissed.

---

[19] 353 A.2d 212, 216 (Del. Super. 1976).
[20] Tr. at 33:20 – 34:11.
[21] Compl. ¶ 24.
[22] Compl. ¶ 5.
[23] Motion to Dismiss at 3-4.

The parties acknowledged at oral argument that no contract exists for the work that ECS performed, and therefore 25 *Del. C.* § 2703 (regarding improvements to the land alone) does not apply.[24] Therefore, in order to fall within the scope of the mechanic's lien statute, ECS must satisfy the requirements of 25 *Del. C.* § 2702(a) and show that the services were provided in relation to a "structure."[25]

Because of the similarity between the claims in the *Pearce & Moretto* complaint and the claims in this action, the Court's recent ruling in *Pearce & Moretto* is instructive.[26] In that case, the plaintiff was hired "to perform infrastructure construction services" for two housing developments, Windsor Commons at Hyetts Corner and Windsor South at Hyetts Corner – the same developments at issue in this action.[27] The plaintiff sought a mechanic's lien for seven open lots in the Enclave (the same seven Lots at issue here) as well as a claim for an alleged violation of the BCPA, among others.[28] The defendant argued that plaintiff failed to state a claim for a mechanic's lien because the lots on which they sought liens were "vacant and undeveloped."[29] Therefore, any lien would need to

---

[24] Tr. at 40:16-40:22.

[25] *Pearce & Moretto*, 2020 WL 532748, at *2.

[26] *Id.* at *1.

[27] Compl. ¶ 4. The Windsor South development is now known as the Enclave at Hyetts Crossing, and is referred to in this decision as the "Enclave."

[28] Again, the claims in the *Pearce & Moretto* action are virtually identical to those in this action.

[29] *Pearce & Moretto*, 2020 WL 532748, at *1.

9

be based on improvements to the land alone, requiring a contract in conformity with 25 *Del. C.* § 2703.

The Court began its analysis by first determining whether the services provided by the plaintiff were to the land alone or whether they were provided in relation to any structure (*i.e.*, the future houses that may be built on the vacant lots). After reviewing the scant case law interpreting the term "structure" under the mechanic's lien statute, the Court concluded that the work the plaintiff performed there "must be considered an improvement to land, rather than an improvement to structure."[30] The Court also held that its "decision cannot be based on what may occur in the future, but what was occurring at the time the work was performed."[31] The Court then dismissed plaintiff's mechanic's lien claims because the contract at issue did not include a description of the metes and bounds, and therefore did not meet the requirements of Section 2703.

Consistent with the decision in *Pearce & Moretto*, this Court finds that ECS has not alleged any relationship between the landscaping work performed and an existing structure.[32] ECS's argument is as follows: ECS performed landscaping work to the common area of the Enclave, and because the common area benefits all

---

[30] *Id.* at *3.
[31] *Id.* at *3.
[32] For purposes of clarity, and because some of the arguments made at oral argument differ slightly from this argument, the Court will address those issues in this Opinion.

lots within the Enclave equally, a mechanic's lien can attach to each of the Lots at issue because they will one day have a house (*i.e.* a structure) built upon them.

ECS's claim for a mechanic's lien under these circumstances is even more attenuated than in *Pearce & Moretto*. The Enclave is comprised of multiple lots, without any presently built homes or townhouses on the seven Lots at issue. Cases analyzing the term "structure" in the context of a mechanic's lien have interpreted this term to include only houses and other buildings permanently situated or erected upon the land.[33] The lien obtainable upon the structure "may be extended, but limited to, labor and materials furnished in connection with those items specifically set forth in 25 *Del. C.* § 2702(b), as being necessary to or a component part of the house or building."[34]

---

[33] *Earl D. Smith, Inc. v. Carter*, 1998 WL 283379, at *1 (Del. Super. Feb. 17, 1998) (The claims were dismissed for failure to apportion the cost among the relevant structures, noting plaintiff did not plead a contract in conformity with section 2703 and thus dismissed any additional claims based on improvements to land alone); *C&J Paving, Inc. v. Hickory Commons, LLC*, 2006 WL 3898268, at *1-2 (Del. Super. Oct. 6, 2006) (a mechanic's lien based on paving and curbing of the streets within a vacant development must be considered an improvement solely to the land because no houses, buildings, or other structures had been built in the development and therefore section 2703 would apply, requiring a contract); *Jones v. Julian,* 195 A.2d 388, 390, 56 Del. 587 (Del. 1963) (services performed by a subcontractor in "paving around a motel" were not considered improvements to the land alone because the work related to the general contractor's construction of improvements to the motel, indicating contract requirements for mechanic's lien based on improvements to land alone are not applicable).

[34] *Pioneer Nat. Title Ins. Co. v. Exten Assocs., Inc.,* 403 A.2d 283, 286 (Del. 1979).

ECS fails to show that the labor and materials used on the open spaces were necessary or component parts of any existing structure. ECS admits that the work was performed only on open spaces at the Enclave and that the Lots at issue did not have completed structures (*i.e.* houses) at the time services were rendered.[35] The mechanic's lien statute – which must be construed strictly – cannot be so flexible as to pertain to landscaping services performed on "open spaces" within a residential development and such a decision would stretch the statute "beyond the plain and fair sense of the terms" in the statute.[36] Therefore, the statute cannot apply to landscaping services on open spaces not connected to the Lots, especially when the Lots sit empty and undeveloped.[37] Therefore, ECS's mechanic's lien claims are dismissed.

---

[35] ECS admits that the Complaint specifically states "open spaces" without including the seven Lots themselves as the area that was allegedly serviced. Tr. at 34:7. ECS points to the invoice of services attached to the Complaint as Exhibit "C;" however, the invoices merely show the services rendered, not where the work was performed on the actual Lots at issue. *See also* Compl. ¶¶ 15, 26, 38, 50, 62, 74, 86.

[36] *Heitz*, 113 A. at 902. Because the parties acknowledged at oral argument that no such contract existed, the Court need not reach any arguments made regarding Section 2702(b) and 2703. The decision in *Pearce & Moretto* makes clear that a contract is required under Section 2703, and because ECS admits that no such contract exists, ECS's complaint can be dismissed on this ground as well.

[37] *Pearce & Moretto*, 2020 WL 532748, at *2 ("[T]he Court believes the decision cannot be based on what may occur in the future, but what was occurring at the time the work was performed.").

## II. ECS fails to state a claim under the Building Construction Payments Act.

The pertinent part of the BCPA states:

> All moneys or funds received by a contractor in connection with a contract for the erection, construction, completion, alteration or repair of any building or for additions to a building and all moneys or funds received by a contractor in connection with a contract for the sale of land and the erection, construction, completion, alteration or repair of any building or addition thereon, shall be trust funds in the hands of the contractor. [38]

The arguments made here regarding the applicability of the BCPA are identical to those made in *Pearce & Moretto*.[39] Hyetts argues that ECS does not meet the definition of "contractor" under the BCPA because ECS did not perform the work on any building or structure on the Lots.[40] ECS counters that it meets the definition of contractor under the BCPA because their services related to individual structures that will be built in the future.[41]

The Court is not persuaded by ECS's arguments. As this Court recently held, there are two possible ways to meet the definition of contractor under the BCPA: "(1) to furnish labor and/or materials in connection with the erection, construction,

---

[38] 6 *Del. C.* § 3502.
[39] *Pearce & Moretto*, 2020 WL 532748, at *4-5.
[40] Tr. at 18:6- 18:17.
[41] Tr. at 27:19 – 27:21; Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss ¶ 11, citing *Earl D. Smith, Inc. v. Carter,* 1998 WL 283379, at *1 (Del. Super. Feb. 17, 1998).

completion, alteration or repair of any building or for additions to a building; or (2) for the sale to such other person of any lands and premises upon which such contractor undertakes to erect, construct, complete, alter or repair any building or addition to a building."[42]

The BCPA "is unambiguous and its plain language states that the statute only applies to the construction of buildings."[43] The United States District Court for the District of Delaware addressed this same question in *VSI Sales, LLC v. Griffin Sign, Inc.*, stating that the legislature consistently used the terminology building and construction throughout the Act "thereby reinforcing the fact that the law only applies to building construction work."[44] This same position was reinforced in *Pearce & Moretto*, where the Court held that the BCPA does not apply to services rendered solely to the improvement of land.[45]

Therefore, the Court will grant Hyetts' Motion to Dismiss Count X of the Complaint. It is clear that the BCPA pertains to contracts for the sale of land and the work performed in relation to the any buildings thereon. There is no building situated on any of the seven Lots or in the open spaces alleged in the Complaint. Therefore, the statute does not apply under the facts asserted here.

---

[42] *Pearce & Moretto*, 2020 WL 532748, at *4 (citing 6 *Del. C.* § 3501(2)).
[43] *VSI Sales, LLC v. Griffin Sign, Inc.,* 2014 WL 1653271, at *2 (D. Del. Apr. 25, 2014).
[44] *Id.*
[45] *Pearce & Moretto*, 2020 WL 532748, at *4-5.

14

## CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss Counts I-VII and Count X of the Complaint is **GRANTED.  IT IS SO ORDERED.**

Meghan A. Adams, Judge